Shirley BASHAM, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Alice BASHAM and Shannon
Basham, Appellants,

v.

COMMONWEALTH of Kentucky,
Appellee.

Lester SCOTT, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

April 19, 1984.

Rehearing Denied Oct. 4, 1984.

Steven L. Beshear, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, for appellee.

Frank E. Haddad, Jr., Louisville, John Tim McCall, Vicki L. Layman, Louisville, for amicus curiae.

Robert D. Simmons, Bowling Green, for appellant, Lester Scott.

LEIBSON, Justice.

In this case Kentucky State Police and prosecutors have utilized information obtained by federal authorities pursuant to a federal wiretap order both to obtain a search warrant and as trial evidence in state court. The sole issue is whether information thus obtained could be so utilized in light of a state statute prohibiting wiretaps.

Shirley Basham, his wife Alice Basham, his son Shannon Basham, and Lester Scott, have each appealed from judgments of conviction for offenses occurring in Warren County and tried on change of venue in Boyle County, involving multiple charges of knowingly receiving stolen property over one hundred dollars ($100), criminal possession of a forged instrument (counterfeiting), and possession and/or trafficking in controlled substances.

Shirley Basham, who is viewed as the ringleader, has been convicted of fourteen (14) separate charges and received sentences totaling twenty-eight (28) years and twenty-five thousand five hundred dollars ($25,500) in fines.

Alice Basham was convicted of six (6) separate charges and received sentences totaling three (3) years plus six thousand dollars ($6,000) in fines.

Shannon Basham was convicted of three (3) separate charges and received a sentence of one (1) year plus fines totaling five hundred dollars ($500).

A fourth participant in the Bashams' criminal activity, Lester Scott, was convicted on fifteen (15) separate charges involving knowingly receiving stolen property, counterfeiting, and possession of narcotics and controlled substances and received a

W. Currie Milliken, Milliken & Milliken, Bowling Green, W. Earl Dean, Dean & Dean, Harrodsburg, for appellants, Shirley Basham, Alice Basham and Shannon Basham.

total of twelve (12) years plus three thousand seven hundred fifty dollars ($3,750) in fines. He makes one claim of error in addition to the challenge against wiretapping. He claims that certain physical evidence used to convict him of knowingly receiving stolen property and counterfeiting was beyond the scope of the warrant and not subject to seizure under the "plain view" doctrine.

These convictions grew out of an extensive criminal investigation centered around the suspected criminal activity of Shirley Basham and his family conducted by the Federal Bureau of Investigation and the Kentucky State Police, acting sometimes independently and sometimes in concert. The convictions were based primarily on evidence obtained as a result of a wiretap operation conducted in Warren County by the F.B.I. pursuant to a Wiretap Order obtained from a United States District Judge on August 14, 1981. This Order authorized the F.B.I. to conduct a wiretap of two telephones at the home of Shirley Ray Basham with certain specified restrictions. Tape recordings from this eavesdropping operation (electronic surveillance) were turned over to Kentucky State Police who used them before trial to obtain warrants for a search producing incriminating evidence. Additionally, state prosecutors used the recordings as primary evidence during the trial.

Both sides state this is an important issue of first impression for our Court. Should we permit evidence obtained in a wiretap operation conducted by federal law enforcement officers to be used in Kentucky courts when we have a state statute making electronic eavesdropping illegal?

On the one hand, even the proponents of a modified form of wiretap would have to admit that wiretapping is at best a "dirty business." See *Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Justice Holmes dissenting). On the other hand, even the opponents of any form of wiretapping would have to be in general agreement with the objectives of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, now codified as 18 U.S.C. §§ 2510–2520, "Wire Interception and Interception of Oral Communications," seeking to help put big time criminals and organized crime out of business.

We must strike a balance between the individual's right to privacy and the public's right to protection.

Initially the United States Supreme Court did not consider a wiretap by law enforcement officers covered by the constitutional protections in the Fourth Amendment. *Olmstead v. United States, supra.* But it has been so regarded since *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Electronic eavesdropping in any form without the prior approval of a judge or magistrate upon a showing of probable cause and under appropriate statutory authorization is now recognized as constitutionally impermissible under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, the federal wiretap statute, was enacted to meet the constitutional requirements of the United States Supreme Court decisions preceding it.[1] The statute permits the Attorney General, or an Assistant Attorney General specially designated by him, to authorize an investigative or law enforcement officer to apply to a federal judge for authorization to intercept evidence of a long list of federal offenses. 18 U.S.C. §§ 2516(1) and 2518(1)(a). It also allows the states to pass statutes authorizing interception by state law enforcement officials, after approval of a state judge, in connection with an equally long list of state offenses. 18 U.S.C. § 2516(2). Information obtained by an authorized interception may be used by law enforcement officers in the performance of their duties, and unless otherwise privi-

---

**1.** Wright, Federal Practice and Procedure: Criminal 2d § 665.1 p. 642–3, compilation of cases upholding constitutionality.

leged, is admissible in evidence. 18 U.S.C. § 2517(1), (2), (3) and (4).

Kentucky has not enacted legislation authorizing electronic surveillance by state law enforcement officials. Such an operation by the Kentucky State Police, just as with any other person, is unlawful under the Kentucky statute prohibiting eavesdropping.

KRS Chapter 526, "Eavesdropping and Related Offenses," provides in substance that any person who "intentionally uses any device to eavesdrop," is guilty of a Class D felony, "whether or not he is present at the time." KRS 526.020. It further provides that any person intentionally installing or possessing a device for use in eavesdropping, or divulging information thus illegally obtained, is guilty of a misdemeanor.

No exception is made for police or police activity in KRS Chapter 526. But KRS 503.040(1) provides that "conduct which would otherwise constitute an offense is justifiable when it is required or authorized by a provision of law imposing a public duty or by a judicial decree." "Provision of law" is not confined to provisions of state law. KRS 503.040 further provides:

"(2) The justification afforded by subsection (1) applies when:

(a) The defendant believes his conduct to be required or authorized by the judgment or direction of a competent court or tribunal or in the lawful execution of legal process ...

■ With these statutes in mind we address the threshold question, whether the wiretap was a violation of Kentucky law when authorized by a federal wiretap order. In *United States v. Votteller*, 544 F.2d 1355 (6th Cir., 1976), the Sixth Circuit Court of Appeals affirmed a ruling by the Hon. Howard D. Hermansdorfer, Judge of the District Court for the Eastern District of Kentucky, admitting evidence obtained by federal officers conducting electronic surveillance in Kentucky pursuant to a federal wiretap order. Judge Hermansdorfer concluded that such surveillance was not illegal under the Kentucky eavesdropping statute because "it was justified under the provisions of KRS 503.040." On appellate review the Sixth Circuit affirmed, but thought it unnecessary to its decision to decide if there was a violation of state law. We agree with Judge Hermansdorfer's conclusion that under KRS 503.040 federal officers conducting an eavesdropping operation pursuant to a valid federal wiretap order are not in violation of state law.

■ Further, under the doctrine of federal preemption, the Kentucky statute could not make the wiretap activity of the federal officials illegal even had the Kentucky statute so intended. In *United States v. Hall*, 543 F.2d 1229 (9th Cir., 1976), the Ninth Circuit Court of Appeals considered the use in federal court of evidence obtained in California by federal officers where a state statute expressly prohibited use of evidence from a wiretap. The court held that even though federal law does not preclude the states from enacting more restrictive wiretapping statutes of their own, the states cannot make illegal a wiretap conducted pursuant to a valid federal wiretap order.

■ Thus, if the federal wiretap conformed to the requirements of the Federal Wiretap Statute, the evidence was not obtained illegally and the "exclusionary rule" for suppression of evidence illegally obtained by police officers or prosecutors by means constitutionally impermissible is not involved. Is there some other statute, rule of law or policy prohibiting use of the evidence? Should use of the wiretap information by Kentucky State Police who were themselves prohibited from conducting such an eavesdropping operation be prohibited because it permits the police to accomplish by indirection what is directly forbidden?

Appellants rely on two cases supporting the view that the state statute should be interpreted as expressing a policy against eavesdropping or wiretapping so pervasive that no exception should be made for evidence obtained under a federal wiretap order and turned over to state officials.

Those cases are *People v. Jones*, 30 Cal. App.3d 852, 106 Cal.Rptr. 749 (1973) and *State v. Williams*, 94 Wash.2d 531, 617 P.2d 1012 (1980).

In *People v. Jones, supra*, the California Court looked at the federal wiretap statute and an *express* provision in the California statute forbidding the use of such evidence and concluded:

"The California law requiring exclusion of evidence does not conflict with these provisions of the federal law. The protection of privacy afforded by the federal standard has been increased, but in no way have the federal officers' powers to gather information under federal law been diminished by California's refusal to accept information provided by federal officers." 106 Cal.Rptr. at 751.

In *State v. Williams, supra*, the Washington Supreme Court looked at the federal wiretap statute and the state "privacy act" and reached a similar conclusion: "the federal wiretap statute does not preempt the more rigorous Washington privacy act." 617 P.2d at 1017. The Washington decision proceeded from legislative "history" and from that Court's view that the statutory language excluded a wiretap by "any individual."

A contrary result was reached in Pennsylvania in *Commonwealth v. Bennett*, 245 Pa.Super., 457, 369 A.2d 493 (1976). The Pennsylvania court permitted use of information obtained pursuant to a wiretap authorized and conducted in New Jersey to obtain a search warrant in Pennsylvania even though the information could not have been legally obtained under the laws of Pennsylvania:

"It is not, however, a part of the judicial function to extend and amend the legislation here involved by drafting an amendment to that legislation which declares *all* wiretap information and evidence secured thereunder illegal *wherever* and *however* it may be obtained. Had the legislature so intended, it would have been a matter of no difficulty, by the use of a few simple words of English, to so

declare it." 369 A.2d at 494. (original emphasis).

The opinion concludes:

"No useful purpose whatsoever would be served by denying the Commonwealth the use of this information when applying for a search warrant. We would not chastise errant law enforcement agencies or officers and we are not dealing with scoundrels who would use this information to the detriment of our citizens." 369 A.2d at 495.

We recognize the legitimate underpinnings for this controversy, the importance of maintaining our right of privacy against intrusion by electronic surveillance and the universal distaste for surreptitious monitoring of intimate personal communication. But we also recognize that it is for the legislature to strike a balance between these considerations and protecting the public against criminal activity by its discovery and prosecution. It is for the General Assembly, in exercise of its responsibility to express public policy, to decide whether *all* information obtained by electronic surveillance should be suppressed in Kentucky prosecutions even if such surveillance is carried out according to federal law and pursuant to federal court order. We are mindful of our responsibility not to invade the legislature's policy making function in striking the balance between the right of privacy and the public's right to protection.

In *Nazareth Literary & Benev. Inst. v. Stephenson*, Ky., 503 S.W.2d 177 (1973), we considered a somewhat similar problem. The question was whether the plaintiff in a medical malpractice action could obtain and use as evidence hospital "peer review" records. We held:

"It is argued that this court should engraft an exception to the procedural rules for discovery that such reports as are sought here must remain confidential because their revelation would impede the freedom of communication between physicians and hospital authorities concerning proper methods of treatment and the corrections of mistakes. Although

this might be regarded as an initially appealing argument, on reflection, one might well debate wherein the public interest lies. Claims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively few instances in the common law." 503 S.W.2d at 178–9.

We concluded that the evidence was obtainable and the question of privilege by public policy addressed itself to the legislature. Subsequently the legislature enacted KRS 311.377 making such records confidential. Here the legislature has the same prerogative. It may extend the statute to exclude all use of evidence obtained by electronic surveillance or eavesdropping, wheresoever and however obtained. But we must resist the impulse to legislate an evidentiary exclusion that the legislation does not itself provide.

The proper position for this Court is expressed in *People v. Fidler*, 72 Ill.App.3d 924, 29 Ill.Dec. 51, 391 N.E.2d 210 (1979). The Illinois court held that evidence seized by federal officers as the result of eavesdropping which conformed to federal constitutional and statutory requirements but not with the Illinois Eavesdropping Statute could be used against the defendant in the state court proceeding. The salient facts in *Fidler* are similar to the present case. Federal officers undertook electronic surveillance pursuant to a federal wiretap order, investigating postal irregularities. Using the information thus obtained the officers obtained a search warrant. The subsequent search revealed no evidence of federal crimes, but did produce evidence of state crimes which the federal officers turned over to state officials for state prosecution. The search was carried out by federal officials rather than state officials as in the present case, but we do not view this distinction as critical. The question is the use of evidence obtained by a federal wiretap in a state prosecution where the state statute would prohibit the use of such evidence if obtained by state officials. The court concluded that such evidence should not be suppressed:

"(S)ince the actions of the Federal Postal authorities, pursuing a wholly federal investigation, were entirely lawful, and the record contains no hint of collusion between federal and state authorities seeking to avoid the limitations of the Illinois Eavesdropping Statute. The only result of the entry of the suppression order in this case is that it prevents highly probative evidence from being available to the finder of fact in a criminal trial. In our view, the order constituted an unwarranted extension of the exclusionary rule and must be reversed." 391 N.E.2d at 211.

The *Fidler* case strikes the touchstone of the next serious question in this case. The appellants argue, and the Commonwealth conceded for purposes of this case, that if there were no independent, bona fide federal investigation in progress, if there were "collusion between federal and state authorities seeking to avoid the limitations of the (state) statute," *Fidler, supra*, the evidence thus obtained should be suppressed. Further, the Commonwealth concedes the general principle that "evidence illegally seized by officers of one sovereign cannot be utilized by officers of the other sovereign." *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), so held and laid to rest the so-called "silver platter" doctrine expressed in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), which held to the contrary.

▆▆▆ Thus the question comes down to deciding what legal definition should we give to the term "collusion" as it applies to obtaining wiretap evidence in the present circumstances? *Black's Law Dictionary*, 5th Ed., p. 240 defines "collusion" as "an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." Applied to the present circumstances, this means that if there were no federal investigation in progress and no reason to believe that a federal offense of the kind authorized for a wiretap investigation by 18 U.S.C. § 2516(1), there would be collu-

sion vitiating the legality of the wiretap investigation and the admissibility of the evidence thus obtained.

Further, if there were proof that the federal officers did not substantially comply with the necessary procedural steps to obtain a federal wiretap order and carry it out, the evidence resulting from the wiretap should be suppressed. 18 U.S.C. § 2518(10)(a) provides a procedure for "any aggrieved person" to "move to suppress the contents of any wire or oral communication intercepted pursuant to (the act), or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization of approval."

The Act makes the suppression procedure available "before any court," including state court, where the wiretap information may be utilized.

Thus the appellants were afforded the opportunity to attack the wiretap procedure utilized here by showing that the procedure itself was not in substantial conformity with the federal wiretap statute, or even if the procedure so appeared on its face, by showing that the wiretap was in fact the result of collusion between state officials and federal officials to obtain evidence for a state court prosecution as opposed to a legitimate federal investigation. Indeed, if there were no legitimate federal investigation in progress, the application for the wiretap order would necessarily fail to comply with the federal wiretap statute.

The evidence in this case was that initially the federal authorities and state authorities each were conducting an investigation of the suspected criminal activity of Shirley Basham, separate from and independent of each other. The federal authorities were investigating Mr. Basham for interstate transportation of stolen property and of controlled substances; the state authorities for knowingly receiving stolen property and trafficking in narcotics. The federal investigation was older in time and when the federal officers learned of the state investigation it was the federal authorities who first suggested that federal officers and state officers work on this case together.

The federal authorities had made two unsuccessful attempts to obtain an order from federal court to tap the unlisted phones at the Shirley Basham residence before joining their efforts with Kentucky State Police. Thereafter, apparently by their combined efforts, the federal authorities were able to sufficiently document their application to satisfy the federal district judge of the need for and legitimacy of a federal wiretap order. Their procedural difficulties suggest that the federal judge scrupulously took account of the Fourth Amendment considerations underlying the statutory procedure in the federal wiretap statute.

The federal law enforcement officials maintained the wiretap exclusively. State officers were not permitted to listen on any of the earphones, but they were kept advised of what was being heard. This information was then utilized by the state police to secure search warrants which resulted in recovery of stolen property and drugs. Both the physical evidence thus obtained and the tape recordings were used in evidence against these appellants in the present prosecution.

Standing alone, the fact that the federal and state officials worked jointly and concurrently in this investigation is not collusion mandating suppression of the evidence. Both were also acting independently to carry out separate responsibilities investigating federal and state crimes, respectively. Sharing information and combining their efforts is cooperation, not collusion. The elements of fraud and illicit activity inherent in the term collusion are absent. 18 U.S.C. § 2517 expressly contemplates exchange of information and use of wiretap evidence between federal and

state officers on the order of what occurred in this case.

The appellants' motion to suppress encompassed both the tapes of the wiretaps and the physical evidence resulting from the search. The record shows their pretrial motions were given an extensive hearing both in the Warren Circuit Court where the indictment was brought and subsequently in the Boyle Circuit Court where the case was transferred on change of venue. Hon. J. David Francis, Judge, Warren Circuit Court, made extensive written findings covering some twenty-two (22) pages finding that the procedures used for the application and issuance of the warrant were "proper in every way." After additional hearings and sworn testimony before Hon. Henry Pennington, Judge, Boyle Circuit Court, the record shows he reached the same conclusions. Further, the record shows that in both instances appellants were granted adequate discovery, including the right to call and cross-examine state and federal officials, before these rulings were made.

Appellants complain that there are variances between the detailed requirements of the federal wiretap order and the manner in which the wiretap was carried out and the information utilized. We find no authority burdening the *execution* phase of a wiretap operation with hypertechnical requirements. Apparently, as long as there has been a good faith effort and substantial compliance with the terms of the order, there is no reason, constitutional or otherwise, to suppress the evidence resulting from the wiretap. cf. *Scott v. U.S.*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) and *United States v. Wolk*, 466 F.2d 1143 (8th Cir., 1972). It is only where the method used to tap the defendant's telephone "deliberately flouted and denigrated statutory provisions designated for protection of the public," that the evidence has been suppressed. *United States v. Eastman*, 465 F.2d 1057 (3rd Cir., 1972).

In short, appellants have vigorously argued that the wiretap procedure carried out in the present case failed to comply with the statutory mandates of the federal wiretap statute, but the record fails to support these contentions in any way that is material to the manner in which the wiretap information was used. The findings of the trial courts that have considered the issues raised are supported by the evidence. We find no error.

Appellant, Lester Scott, further complains that the trial court erred in overruling his objections to the introduction of certain physical evidence which was discovered in executing the search warrant on his home, but not covered specifically by the warrant. The only element of this claim that merits discussion involves certain guns suspected as stolen property and later identified by computer check.

▮ Had these articles been plainly identifiable as stolen property their seizure would have been proper under the "plain view" doctrine even though the officers were not aware that such property was on the premises when the search was initiated. *Harris v. United States*, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed.2d 1399 (1947); *Baril v. Commonwealth*, Ky., 612 S.W.2d 739 (1981). In *Jones v. Commonwealth*, Ky., 416 S.W.2d 342 (1967), we stated, "While engaged in a legitimate search under a search warrant describing specific articles, it is proper to seize stolen or contraband property ... though the items are not described in the warrant." *Id.* at 343.

But the complaint here is that the officers could not confirm that the property was stolen or contraband until they ran a check through the National Crime Information Center (NCIC) computer. Appellant Scott cites *United States v. Gray*, 484 F.2d 352 (6th Cir., 1973). On appeal from the United States District Court for the Eastern District of Kentucky, the Sixth Circuit Court of Appeals held that the actions of the state police in removing rifles from the defendant's closets, examining them, and copying down the serial numbers, while carrying out a warrant directed to seizure of alcoholic beverages, could not be justified under the "plain view" doctrine. The court in *Gray* concludes that the police officers' acts in handling the guns, consti-

tuted "a seizure." We disagree. The mere act of examining the property in plain view while on a lawful search and copying down serial numbers does not constitute an unreasonable seizure.

■ The nearest case in point which we find probative of the present issue is *Deberry v. Commonwealth*, Ky., 500 S.W.2d 64 (1973), cert. den., 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473, where the appellant was briefly detained during an investigatory stop so that police officers could obtain information to check the serial numbers on tires on his truck against a record of the serial numbers on stolen tires. We held that "the constitution only prohibits *unreasonable* searches and seizures," and the brief stop involved was not unreasonable in the circumstances. *Id.* at 65 (original emphasis). It would be equally *unreasonable* to extend the Fourth Amendment to prohibit the activities of the police officers in obtaining the serial numbers from property on the premises that appear suspicious and later checking it through a computer. We find nothing inherently unconstitutional in the use of computers to assist a police investigation.

The judgment of the trial court is affirmed.

AKER, GANT, LEIBSON, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., files a dissenting opinion.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent. The Kentucky legislature has clearly expressed its intention in Chapter 526 of the Kentucky Penal Code to disallow what the Court has opened the door for in this opinion. To attempt to reconcile KRS Chapter 526 with the Court's majority opinion here requires the ability to "doublethink." "Doublethink" as George Orwell explained in his classic modern novel, *1984*, "... means the power of holding the contradictory beliefs in one's mind simultaneously, and accepting both of them." I do not see how one

can hold the mandate of KRS Chapter 526 in one's mind and yet simultaneously accept the eavesdropping evidence in this case.