Forrest T. SWEASY and Carol B. Sweasy, Appellants,

v.

KING'S DAUGHTERS MEMORIAL HOSPITAL, d/b/a Frankfort Hospital, Inc. and Hospital Corporation of America, Appellees.

No. 88–SC–592–MR.

Supreme Court of Kentucky.

June 8, 1989.

Norman L. Belker, Louisville, for appellants.

C. Alex Rose, Russell H. Saunders, Martin A. Arnett, Weber & Rose, Louisville, for appellees.

Colleen McKinley, Wyatt, Tarrant & Combs, Louisville, for amicus, Ky. Hosp. Assoc.

Mark C. Shuford, Stites & Harbison, Louisville, for amicus, Ky. Medical Assoc.

Michael A. Breen, Middletown, for amicus, Kata.

LEIBSON, Justice.

This is a medical negligence case. After surgery, Forrest T. Sweasy developed an infection resulting in a leg amputation. Dr. O. M. Patrick, the operating surgeon, enjoyed staff privileges at King's Daughters Memorial Hospital. Dr. Patrick is charged with negligence in failing to administer a pre-operative prophylactic antibiotic. Dr. Patrick and the hospital personnel are charged with negligence in failing to timely diagnose and properly treat the infection.

Utilizing CR 33, the appellants, Sweasy and his wife, submitted a request for production of documents to the hospital, seeking, inter alia, "Infection Control Committee records and reports," "incident reports involving infections," "incident reports involving Dr. O.M. Patrick, his partners and associates," "investigation and/or peer review records and reports involving Dr. Patrick," and other documents which are utilized in the peer review process. Many of these documents are relevant to the granting of staff privileges, the licensing of health service organizations, and other aspects of physician and hospital accreditation referred to in KRS 311.377.

█ Section (1) of KRS 311.377 (the 1980 version in effect when the documents were requested) sets up a waiver of "any claim for damages for any good faith action" taken as part of the peer review process. This waiver applies solely to "[a]ny person who applies for, or is granted staff privileges after June 17, 1978." Section (2) then offers a privilege against discovery in these words:

"(2) The proceedings, records, opinions, conclusions and recommendations of any committee, board, commission, professional standards review organization, or other entity, *as referred to in subsection (1) of this section shall be confidential and privileged and shall*

*not be subject to discovery*, subpoena, or introduction into evidence, in any civil action in any court or in any administrative proceeding before any board, body, or committee, whether federal, state, county, or city. This subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation." [Emphasis added.]

The 1980 version of the statute was enacted as Section 33 of an omnibus bill entitled:

"*AN ACT relating to the establishment of certificate of need, licensing and regulation of health facilities and health services.*" Chapter 135, S.B. 340, eff. July 15, 1980.

With the possible exception of Section 33 (if interpreted to include a patient's malpractice action), *all* of the thirty-five sections of the 1980 Act relate exclusively to the procedures described in the title. Section 1 states "it is the purpose of this chapter (the 1980 Act) to provide for the establishment of the Kentucky health facilities and health services certificate of need and licensure board for the specific purpose of licensing health facilities and services, and to review and approve applications for certificates of need."

The trial court was of the opinion that this statute was limited to complaints involving, as the statute says, "[a] person who applies for, or is granted staff privileges," that otherwise interpreted it would be unconstitutional. In denying the hospital's motion for a protective order the trial court stated it was "of the considered opinion that the protection accorded by KRS 311.377 as interpreted in *McGuffey v. Hall*, [Ky.,] 557 S.W.2d 401 (1977), and subsequent cases is limited to defamation cases." [1]

Instead of complying with the trial court's order compelling discovery, the hospital filed an original action in the Court of Appeals seeking a writ prohibiting the trial court from enforcing the order. Without

---

1. The hospital's Petition for a Writ of Prohibition did not challenge the relevancy of the requested documents, nor did it seek any immediate protection such as prerelease judicial *in camera* inspection.

giving reasons, the Court of Appeals granted the writ, stating the trial judge is "prohibited from enforcing his order ... which overruled movant's motion for a protective order." The appellants, having intervened in the Court of Appeals, pursued an appeal to our Court as a matter of right.

This is the third time our Court has been confronted with the question whether hospitals and physicians can claim a privilege against discovery of records related to peer review procedures. The parameters of this term are somewhat difficult to define because some of the records internally generated are not just the opinions of committees involved in peer review, but records and reports also utilized in treating patients and otherwise involved in the everyday operation of the hospital. In prior cases hospitals have claimed both a common law and statutory privilege from discovery: *Nazareth Literary & Benevolent Inst. d/b/a SS. Mary & Elizabeth Hospital v. Stephenson*, Ky., 503 S.W.2d 177 (1973); *McGuffey v. Hall*, Ky., 557 S.W.2d 401 (1977). Up until now, we have recognized neither.

On the first occasion we had to confront this issue, the *SS. Mary & Elizabeth Hospital* case, the hospital argued as it does now that "such reports as are sought here must remain confidential because their revelation would impede the freedom of communication between physicians and hospital authorities concerning proper methods of treatment and the corrections of mistakes." 503 S.W.2d at 178.

To this we responded, "on reflection, one might well debate wherein the public interest lies. Claims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively few instances in the common law." 503 S.W.2d at 179. Thus, the same judicial policy arguments which we then rejected have been made once again in the present case. Indeed, the principal case cited on behalf of the hospital in the present case, *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.C.1970), was explicitly rejected in the prior Opinion. The reasons for refusing to recognize this discovery privilege as a matter of judicial policy are the same now as they were when this precedent was established.

In *Ott v. St. Luke Hospital of Campbell County, Inc.*, 522 F.Supp. 706 (E.D.Ky. 1981), Judge Bertelsman of the United States District Court, Eastern District of Kentucky, carefully considered and rejected the same policy arguments for a confidentiality privilege against discovery which we rejected in the *SS. Mary & Elizabeth Hospital* case. This was a Civil Rights action under 42 U.S.C. Section 1983. The Federal court was asked to extend comity to the state statute. The issue was whether the privileges now codified in KRS 311.-377 was "good judicial policy." 522 F.Supp. at 708. After reviewing pertinent cases, the court stated:

"There is no real showing that the peer review committees' functions would be substantially impaired by denial of the privilege. Indeed, the true efficiency of such committees may be fostered by an atmosphere of openness.... [T]he court cannot permit the discharge of its responsibility to conduct a search for the truth with regard to these matters to be thwarted by rules of privilege in the absence of 'strong countervailing public policies.'" 522 F.Supp. at 711.

This problem returned to our Kentucky Supreme Court as a question of statutory authority in *McGuffey v. Hall, supra*. The statutory history behind this case was as follows:

In 1972, the General Assembly had added a new section to KRS Chapter 311, "Physicians, Osteopaths and Podiatrists," by a statute entitled *"AN ACT relating to medical review committees, boards or commissions."* This new statute, codified as KRS 311.377, provided statutory immunity from civil liability for activities related to the peer review procedure, as enumerated therein, stating a person engaged in such functions "shall not be required to respond in damages for any action taken by him in good faith as a member of such committee, board, commission or other entity." This Act was already in place when the *SS. Mary & Elizabeth Hospital* case

was decided. Since it lacked a second section explicitly related to discovery in civil actions, apparently no one thought to advance it as a reason to cloak peer review records from the discovery process in a patient's medical malpractice action.

At the 1976 Regular Session, the General Assembly enacted Chapter 163, S.B. 248, *"AN ACT relating to health care malpractice insurance and claims."* Section 9 of that Act amended KRS 311.377. Section 9 expanded the description and classification of entities previously described in KRS 311.377 who shall not "be required to respond in damages for any action taken ... in good faith" in the course of the peer review procedure. Then six new sections were added including Section 2 which contained essentially the same language which we have previously quoted from the 1980 Act, the same language relied upon by the hospital in the present case for the privilege against discovery asserted in its writ of prohibition.

Section 51 of our Kentucky Constitution is the subject-title provision. It commands, in pertinent part:

"No law enacted by the General Assembly shall relate to more than one subject, and that subject shall be expressed in the title, . . . ."

This refers to the title to the Act specified by the General Assembly and *not* the headings later on provided by the Legislative Research Commission.

"Title heads, chapter heads, section and subsection heads or titles, and explanatory notes and cross-references, in the Kentucky Revised Statutes, do not constitute any part of the law, . . . ." KRS 446.140.

In *McGuffey v. Hall, supra,* we held Section 9 of the 1976 Act in violation of the subject-title requirement in Section 51 of the Constitution, stating "the subject-matter of § 9 of the Act is not sufficiently related to malpractice claims or insurance to satisfy Const. § 51." 557 S.W.2d at 407.

"Although conduct that results in a malpractice claim may also eventuate in a peer review proceeding, the relationship between the two is clearly coinciden-

tal. A peer review is not designed to serve any purpose of a malpractice claim, and to the extent that the confidentiality conferred upon it serves to protect those who participate in the proceedings, it is a protection against suits for defamation, not malpractice." *Id.*

In *Com. Ex Rel. Armstrong v. Collins,* Ky., 709 S.W.2d 437 (1986), holding that the General Assembly had power to suspend or modify existing appropriations statutes in a biennial budget bill, we rejected a constitutional argument raising Kentucky Constitution Section 51, stating this section should be "liberally construed ... in favor of the validity of the legislation." *Id.* at 443.

"If the title furnishes a 'clue' to the act's contents, it passes constitutional muster." *Id.*

Nevertheless, as Justice Vance cautioned in his Dissent:

"[T]he purposes which impelled the framers of the constitution to place the limitations imposed upon the General Assembly by Section 51 of the constitution were inherently sound and ought not to be eroded to the vanishing point by judicial interpretation." *Id.* at 450.

In *McGuffey v. Hall, supra,* Justice Palmore stated:

"§ 51 ... is not a lifeless anachronism, and there are wholesome limits to what can be loaded into one bill. We have only to ponder the incredible morass in Washington, D.C. [where there is no similar subject-title constitutional protection].... Happily, our Constitution does not permit it." 557 S.W.2d at 407.

The 1980 statute presently at issue is the same as the statute which *McGuffey v. Hall, supra,* declared in violation of Constitution Section 51. This would seem dispositive of the present case, unless the 1980 reenactment of the provisions of KRS 311.- 377 under a new title is sufficient to require a different result. The problem is that the 1980 reenactment is a bill even more omnibus and even less related by title to a civil action asserting a malpractice claim than is the 1976 Bill. The title to the 1980 Act is *"AN ACT relating to the es-*

tablishment of certificate of need, licensing and regulation of health facilities and health services," and all of its thirty-five provisions except the one here at issue patently have less relation to a patient's medical malpractice claim than was the case with the 1976 Act. The Section 51 problem has not been cured but exacerbated.

As we stated in *Commonwealth v. O'Harrah*, Ky., 262 S.W.2d 385, 389 (1953), "[c]onstitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit"; and in *Fannin v. Williams*, Ky., 655 S.W.2d 480, 484 (1983), "we cannot uphold the statute [simply] because we could find some public benefit in its purpose."

The trial court correctly stated that the language of *McGuffey v. Hall* must mean either that the confidentiality privilege expressed in Section 2 of KRS 311.377 is limited to suits against peer review entities as referred to and protected against in Section 1 of the statute, or it violates Kentucky Const. Section 51. In either case, the trial court has correctly applied the mandate of our Court in *McGuffey v. Hall*, and the Court of Appeals ignored that mandate in an Order giving no reasons.

The appellee's Brief cites to *obiter dicta* from *Basham v. Commonwealth*, Ky., 675 S.W.2d 376 (1984), but it is not in point. The issue in *Basham* was whether "information obtained by federal authorities pursuant to a federal wiretap order ... could be ... utilized in light of a state statute prohibiting wiretaps." 675 S.W.2d at 377. We held that it could be used. We cited the *SS. Mary & Elizabeth Hospital* case for the judicial policy that "[c]laims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively *few instances* in the common law." [Emphasis added.] 675 S.W.2d at 381. This philosophy calls for the *opposite* approach to the present case than that advanced by the appellees. We recognized that the legislature has in some

instances created a confidentiality privilege by statute where none exists at common law, and we referred to the subsequent enactment of KRS 311.377(2) by way of illustration as an attempt to do this. But in doing so we considered neither the scope which should be afforded the language in the new statute, nor its constitutionality. Neither of these issues was before us. Indeed, in *Basham* we strictly construed the Kentucky wiretap statute so the evidence would *not* be suppressed. The statements in *Basham* are neither authority or precedent for a writ of prohibition suppressing evidence in the present case.

In the trial court and the Court of Appeals the issues involved the applicability and constitutionality of KRS 311.377(2) as constituted by the 1980 Act. However, we need to address two new issues that have been raised for the first time in our Court, one substantive and one procedural.

■ Substantively, the Appellees' Brief to our Court brings into this case for the first time the subsequent 1988 reenactment of KRS 311.377 in H.B. 551 as a "current formulation." At oral argument appellees' counsel switched horses, beseeching us to disregard H.B. 551 and turn instead to H.B. 576 enacted by that same 1988 General Assembly. H.B. 576 is still another statute covering the same subject.

We are saved from further investigating these new statutes so far as the present opinion is concerned because *none* of the 1988 versions of the Act were law, or were before the Court of Appeals, or were otherwise involved in its decision to grant the Writ of Prohibition with which we are presently concerned.

■ Finally, we turn to the procedural issue raised in our Court. The hospital has filed a motion to dismiss this appeal on grounds that the Hon. Ray Corns, Judge of the Franklin Circuit Court, is an indispensable party whom the appellants failed to name in their Notice of Appeal to our Court.[2] CR 19.01 specifies that a person is an indispensable party if "in his absence

---

**2.** Dr. O.M. Patrick, who is *not a party* to this appeal, filed an untimely motion to dismiss on

this same grounds. His motion is denied on both procedural and substantive grounds.

complete relief cannot be accorded among those already parties." An original action in the Court of Appeals, such as this, seeking a writ of mandamus or prohibition ordering a trial judge to grant or deny interlocutory relief in a pending action is different from other appellate proceedings. The trial judge is a party in name only. He has no interest in the outcome of the litigation, and no connection to it other than the obligation to abide by the Court of Appeals' decision. Indeed, although the trial judge is the named party, the final order of the appellate court is binding on whoever holds the office of trial judge at the time of the decision.

Recognizing this problem, in 1985 we amended the Civil Rules, CR 76.36(2) and (8), to provide that the "real party in interest" as well as the "party [judge] against whom relief is sought" can "file a response" to a petition seeking prohibition or mandamus against a trial judge. We define "real party in interest" in this Rule as "any party in the circuit court action from which the original action arises who may be adversely affected by the relief sought pursuant to this Rule." The real party in interest in the trial court is the person who will be adversely affected if the Petition is granted; he may respond and defend even though the trial judge does not. It is this party and not the trial judge who has an interest in perfecting the appeal when the writ of prohibition or mandamus is granted.

Appellees' motion to dismiss relies on *Milligan v. Schenley Distillers, Inc.*, Ky. App., 584 S.W.2d 751 (1979). *Milligan's* appeal was dismissed on grounds that he failed to name the Workmen's Compensation Board. The Court of Appeals held the Board was an "indispensable party" and not just a "nominal party." Worker's compensation is a statutory proceeding. The agency must be a party pursuant to KRS 342.285(1). The statutory rules applicable to appeals from administrative agencies do not apply in present circumstances. Here, unlike *Milligan*, the trial judge "can be regarded as merely a nominal party." *Id.* at 753. Our Court can grant "complete relief" by setting aside the order of the

Court of Appeals. The trial court's order is then restored to where it was before the original action in the Court of Appeals was filed.

The motion to dismiss filed by the appellees is denied. The order of the Court of Appeals granting a writ of prohibition is vacated.

COMBS, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion.

VANCE, J., dissents by separate opinion in which GANT, J., joins.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent. While I share many of my brother Vance's thoughts in his dissent, I do not share them all.

The cases in this Court interpreting Section 51 of the Kentucky Constitution have, over the years, limited the scope of that section and have placed a less onerous burden on the General Assembly as it writes title to legislative acts. In a very recent pronouncement, *Armstrong v. Collins*, Ky., 709 S.W.2d 437 (1986), we held that the title to an act is sufficient under the test of Section 51 if it contains a *general* notification of the *general* subject matter of the content. If the title furnishes a "clue" to the act's contents, that is all that is required.

The purpose of Section 51 is "to prevent surprise and fraud upon the Members of the General Assembly and other interested parties." *Id.* at 443 (citing *Commonwealth v. Johnson*, Ky., 166 S.W.2d 409, 411 (1942)).

I am amazed that a majority of this Court would declare that the title challenged in this case perpetrated a fraud, or was deceitful, surreptitious, selfish or baleful. *See Id.* at 444. My only conclusion is that the majority has, in effect, changed the test set forth in *Armstrong*, and its progeny, without specifically overruling that line of authority.

For this reason, I dissent.

VANCE, Justice, dissenting.

On four separate occasions the General Assembly of Kentucky has enacted legislation which clearly and in unmistakable terms has provided that proceedings and records of hospital peer review committees and other similar committees shall not be subject to discovery nor admitted into evidence in civil actions. This court has managed to frustrate and circumvent every effort of the General Assembly to protect the confidentiality of such records.

In 1976 in an act entitled, "An Act Relating to Health Care Malpractice and Insurance Claims," provision was made for immunity "to discovery, subpoena, or introduction into evidence, in any civil action in any court, or in any administrative proceeding before any board, body, or committee, whether federal, state, county or city" of the records and proceedings of professional standards review organizations and other similar committees. In *McGuffey v. Hall*, Ky., 557 S.W.2d 401 (1977), this court held that act to be unconstitutional because the title of the act did not bear a sufficient relationship to its contents as required by Section 51 of the Kentucky Constitution.

In 1980 the General Assembly again enacted a bill to provide for immunity from discovery and from admissibility into evidence of the records and proceedings of peer review and similar committees. The language of the 1980 act was almost identical to the 1976 act but was enacted under a different title, doubtless in an attempt to escape the ruling of *McGuffey v. Hall*, *supra*. The 1980 act was entitled, "An Act Relating to the Establishment of Certificate of Need, Licensing, and Regulation of Health Facilities and Health Services." This court today holds that the title of the 1980 act does not sufficiently relate to the contents of the act which protects the confidentiality of peer review records and proceedings and again holds that the legislative attempt to immunize the records and proceedings of such committees cannot be enforced.

In an obvious attempt to find a title which would pass muster with this court's finely tuned sensitivity to Section 51 of the Constitution of Kentucky,[1] the General Assembly in 1988 enacted two more statutes to protect the confidentiality of peer review committee records from discovery or admission into evidence.

House Bill 576 was entitled, "An Act Relating to Health Care." Section 2 of 311.377 provides as follows:

"(2) The proceedings, records, opinions, conclusions and recommendations of any committee, board, commission, professional standards review organization, or other entity, as referred to in subsection (1) of this section shall be confidential and privileged and shall not be subject to

---

1. This court's sensitivities to the requirements of Section 51 of the Constitution of Kentucky are not always so finely tuned. Subsequent to our decision in *McGuffey v. Hall, supra*, this court decided in *Armstrong v. Collins*, Ky., 709 S.W.2d 437 (1986). Therein we held that the title of an act is sufficient if it furnishes only a general notification of the general subject matter of the act. We held that if a title furnishes a clue to the act's contents it passes constitutional muster. We said the proper questions to be determined are whether the challenged act provides a clue to its contents, whether the act perpetrates a fraud, and whether the General Assembly in providing the title to the act and placing it in juxtaposition with the contents of the act effects something deceitful, selfish, or baleful.

*Armstrong v. Collins, supra*, allowed a budget bill to suspend and modify many existing statutes by referring to them by Kentucky Revised Statute number and without any expressed statement of the nature and extent of the suspension or modification. That act was fraught with a much greater potential for abuse than is the act under consideration here.

I was the lone dissenter to the opinion in *Armstrong v. Collins* because I felt that Section 51 of the constitution serves a sound purpose and should not be relaxed or eroded to the vanishing point. I remain of that opinion. It seems to me that the majority opinion is not consistent with the opinion in *Armstrong v. Collins*, and that the majority opinion, in fact, adopts the view which I expressed in the dissent therein. The majority opinion does not, however, overrule *Armstrong v. Collins*, and we are left, in any particular case, to follow either the relaxed standard of *Armstrong v. Collins* or the stricter standard adhered to in this case and in *McGuffey v. Hall, supra*, without expressing any reason for our basis.

Judicial discipline should require us to adopt one approach or the other and stick with it rather than switching back and forth for whatever reason appeals to us at the moment.

discovery, subpoena, or introduction into evidence, in any civil action in any court or in any administrative proceeding before any board, body, or committee, whether federal, state, county, or city. This subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation."

House Bill 551 enacted in 1988 was titled, "An Act Relating to Civil Actions." Section 22 provided:

"(2) At all times in performing a designated professional review function, the proceedings, records, opinions, conclusions and recommendations of any committee, board, commission, medical staff, professional standards review organization, or other entity, as referred to in subsection (1) of this section shall be confidential and privileged and shall not be subject to discovery, subpoena, or introduction into evidence, in any civil action in any court or in any administrative proceeding before any board, body, or committee, whether federal, state, county, or city, except as specifically provided with regard to the board in KRS 311.-605(2). This subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation."

The majority opinion makes an end run around the two 1988 enactments on the ground that neither of them was in effect when this case was before the Court of Appeals or were otherwise involved in the decision to grant the writ of prohibition. This, of course, is true, but I do not believe that House Bill 551 and House Bill 576 enacted in the 1988 session of the General Assembly should be dismissed in such cavalier fashion. While House Bill 551 and House Bill 576 may not have been in effect when this case was decided in the trial court or in the Court of Appeals, they are in effect at the present time and will be in effect when this case is returned to the trial court for further proceedings. When the appellants renew their attempts to discover these documents the appellees will be able to claim that these new statutes are now controlling and that they prohibit the discovery of the documents and their introduction into evidence.

If House Bill 551 or House Bill 576 is found to have an acceptable title and if the acts relate to procedural matters, these acts, rather than the 1980 act, would control the discoverability of the documents sought. It is the general rule that remedial statutes which do not take away a vested right are applicable immediately to all proceedings in pending actions. *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794 at 798 (1987); *Murphy v. Commonwealth,* Ky., 652 S.W.2d 69 (1983); 73 Am.Jur.2d, *Statutes* § 354; 82 CJS, *Statutes* § 422.

The present relevance of the 1988 enactments was raised in the appellees' brief and was discussed at oral argument. Since our opinion involves a case where the trial is pending in circuit court, our opinion should advise the trial court of the correct procedure to follow when the case is returned to the trial court for further proceedings.

GANT, J., joins in this dissenting opinion.