Linda LANHAM, Appellant,

v.

Dirk LANHAM, Appellee.

No. 2009–CA–001025–MR.

Court of Appeals of Kentucky.

Feb. 25, 2011.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellant.

Rebecca J. Johnson, Marion, KY, for Appellee.

Before CLAYTON, COMBS, and WINE, Judges.

## OPINION

WINE, Judge:

Linda Lanham appeals from an order of the Crittenden Circuit Court holding her in contempt for failing to comply with the terms of a divorce decree and order entered by the court. Linda argues on appeal that she was denied due process and that the Crittenden Circuit Court abused its discretion by holding her in contempt without making a specific finding that she had the ability to conform to the order. Linda further argues that the trial judge is not an indispensable party to this appeal. We agree that the trial judge is not an indispensable party to the appeal. Accordingly, we reach the merits of this case and further hold that the Crittenden Circuit Court did not abuse its discretion by failing to make specific findings regarding Linda's ability to conform to its order.

Linda Lanham and Dirk Lanham were married on December 31, 2006, and separated less than one year later. In December of 2007, Dirk filed for divorce in the Crittenden Circuit Court. Linda and Dirk signed a settlement agreement, both under advice of counsel, and the trial court entered a dissolution decree which incorporated the settlement agreement into the decree. The settlement agreement (and final decree of dissolution) specified that Dirk was to assume a Chase credit card debt in the amount of $7,600 and one-half of the parties' telephone bill. It further specified that Linda agreed to assume the debt on a separate Chase credit card in the amount of $9,500, a debt for a Dell computer (which she received in the settlement), and one-half of the parties' telephone bill. Dirk testified that, despite the fact that Linda was disabled, Linda herself proposed the ultimate division of debt in the settlement agreement and indicated at the time that she intended to use monies from a Social Security settlement to satisfy those debts.

Dirk complied with the order and paid the debts assigned to him in the decree. Linda, however, did not pay her obligation to Chase or Dell, and Dirk received demands for payment from both creditors. On January 26, 2009, Dirk filed a motion for contempt and for a restraining order. He alleged therein, and swore by the appended affidavit, that Linda had made no payment on the debt, had expressed her intention not to pay any amount on the debt, and was supposed to be in receipt of

a substantial back-payment award from Social Security in the amount of approximately $20,000. Dirk requested the court restrain Linda from disposing of the back-payment award until such time as the credit card obligation was paid in full or a full hearing could be held on the matter on the grounds that he would be caused irreparable harm if she no longer had the proceeds at the time of the hearing.

The court entered a restraining order to prevent Linda from transferring or otherwise disposing of the Social Security back payment until the scheduled hearing on the matter scheduled for February 10, 2009. On February 10, 2009, Dirk was present and represented by counsel and Linda appeared *pro se*. When asked whether she had received any amount from the Social Security claim, Linda disclosed only that she had received a $1,000 advance and an installment of $2,022.[1] Linda testified that she needed these monies for the payment of medical bills. The court passed the matter until February 24, 2009, and directed Linda to bring a copy of a letter from her disability attorney setting forth the status of her claim and a letter from Chase Bank setting forth what they were willing to accept in terms of payment. The court stated in its order that failure to do so would put Linda at risk of being in contempt of court.

At the hearing on February 24, 2009, Linda produced a letter from the Social Security Administration regarding the status of her claim. Linda did not produce any documentation showing that she had communicated with Chase Bank about a possible payment plan, however. The court set the matter for a hearing on April 21, 2009, for Linda to show cause why she should not be held in contempt.

At the show-cause hearing on April 21, 2009, Linda's testimony was somewhat inconsistent. She testified that she anticipated receiving her back pay in installments at one month, six months, and eighteen months. However, she also testified that she had already received $1,000 in October, $2,000[2] in December, and another $2,022 in February or March (or $5,022 in total back payments). She stated that she was currently receiving $517 each month from Social Security, $169 each month in Supplemental Security Income (SSI), $574 a month in SSI for a disabled child living in her home, and $700 to $800 in food stamps per month, not counting the monies from the back-pay settlement. Linda further testified that she used to sit with an elderly woman for cash until September of 2008 when she stopped due to her disability. However, she also testified that she still sat with the elderly woman on occasion "to fill in for her sister." Although two other adult individuals were living in her home at the time of the hearing, she claimed that neither individual brought any income to the household, other than a $150 check one of the individual's mother sent to him each month. She brought several bills into court to document her expenses; however, almost all of them were in her landlord's name rather than hers. Linda testified that she did pay these bills, however. When asked whether her monthly household income was between $2,100 and $2,200, including the food stamps, Linda agreed that it was.

Linda admitted that she had not made any payment on the Chase or Dell debts that she was ordered to pay since June of 2008. Linda testified that she did not

---

1. Linda did not disclose to the court at this time that she had also received another $2,000 installment.

2. Linda failed to disclose the receipt of this money during prior hearings.

think she had to pay the Chase bill with the $5,022 in Social Security back pay she had received because "she had other bills in her name" that needed to be paid. Linda also admitted to taking two vacations to Florida during the time period in question, one at Christmas and another during Spring Break. While she denied spending the back-pay money from her Social Security claim on the Spring Break vacation, she admitted to spending the $2,000 check she received in December for the Florida vacation at Christmastime. She also admitted that she did not spend the $2,022 she received in February/March on medical bills, despite the fact that she had previously represented to the court that she needed the money for medical bills.

After hearing the above testimony, the court held Linda in contempt and imposed a 180–day sentence which was probated on the grounds that she (1) provide Dirk's counsel proper authorization to contact her counsel in her Social Security case regarding the status of her claim, (2) that she keep the court informed at all times of her current address and telephone number, (3) that she not negotiate any check except for her monthly Social Security and SSI checks, and (4) that she inform Dirk's counsel upon receipt of her next back-pay settlement check.

Linda appealed from the contempt order and moved this Court to treat the matter as a criminal appeal and to expedite briefing. This Court denied Linda's motion to treat the matter as a criminal appeal but granted her motion to expedite briefing. At the same time, a show-cause order was entered by this Court as to why this appeal should not be dismissed for failure to name an indispensable party because Linda failed to name the trial judge, Honorable William E. Mitchell of the Crittenden Circuit Court, as a party to this appeal. Both the issues raised on appeal and by entry of the show-cause order may be resolved by opinion. Accordingly, we now address these issues.

█ Unfortunately, a procedural quandary has arisen surrounding the proper pleading of contempt appeals in the Commonwealth which has plagued both the bench and bar and the courts. It appears that there has been much confusion among the bench and bar concerning whether the trial judge must be named as a party when appealing from a contempt order. Upon surveying the relevant caselaw, one finds that the trial judge is named as a party in some contempt appeals but not in others. *See, e.g., Brockman v. Commonwealth,* 185 S.W.3d 205 (Ky.App.2005) (judge is named as a real party in interest.); *Commonwealth v. Pace,* 15 S.W.3d 393 (Ky.App. 2000) (judge is named as a real party in interest.); *Goodman v. Goodman,* 695 S.W.2d 865 (Ky.App.1985) (judge is not named as a real party in interest.). Further, this issue has met with inconsistent treatment, even in our own Court. *See, e.g., Woodard v. Snodgrass,* 2006 WL 3334029 (Ky.App.2006)(2005–CA–000364–MR) (this Court reached a determination on the merits even though the trial judge was not named as a party.);[3] *Smallwood v. Commonwealth,* 2007 WL 1784018 (Ky. App.2007)(2005–CA–000714–MR) (this Court did not reach a determination on the merits, but instead dismissed, because the trial judge was not named as a party.). This matter is further complicated by the fact that many parties decide to deal with contempt orders by filing a writ of prohibi-

---

3. While we are aware of Kentucky Rule(s) of Civil Procedure ("CR") 76.28(4)(c), which prohibits the citation of unpublished cases as binding precedent where other published precedent exists, we do not cite this case for its precedential value. Rather, this case and the other unpublished cases cited herein are included merely for illustrative purposes.

tion to prohibit the judge from enforcing the order, rather than filing an appeal from the contempt order itself. *See, e.g., Blakeman v. Schneider,* 864 S.W.2d 903, 906 (Ky.1993); *Ford Motor Co. v. Spainhour,* 2009 WL 1108858 (Ky.2009)(2008–SC–000180–MR). We now seek to resolve this morass, thereby dispelling further confusion.

The idea that a trial judge must be named in a contempt hearing may have originated from writ practice, where it is standard procedure to name the judge against whom a writ of prohibition is sought. Indeed, at one time it was the case that a party could not appeal from an order of contempt. 1898 Ky. Acts Ch. 19 § 1 ("[n]o appeal shall be taken to the Court of Appeals ... to reverse a judgment ... punishing contempt"). It was not until 1976, when the Judicial Amendment was passed, that appeals from a contempt order would lie. 1976 Ky. Acts Ch. 70 § 3 ("[e]xcept as provided in Section 110 of the Constitution, an appeal may be taken as a matter of right to the Court of Appeals from any ... order ... in circuit court."). Thus, it was originally the case that a contemnor's only mode of relief was by writ. As such, contempt *appeals* are relatively young in terms of our jurisprudence in the Commonwealth.

In writ practice, the procedure of naming the trial judge arises by rule. CR 76.36(2); CR 76.36(8). Indeed, CR 76.36(1) states that original actions in appellate court may be prosecuted against a judge. CR 76.36(1)(e) and CR 76.36(2) mandate that the judge must be served with the petition and may file a response within 20 days if he so chooses. However, no corresponding rule exists for direct appeals from contempt charges. The reason for this lies in the primary distinction between writs, which are original actions, and appellate practice. In writ practice, the petitioner is asking the appellate court to require the trial court to do or refrain from doing something. Since the trial judge is the representative of the trial court, he or she is named a party to the action. Appellate practice, on the other hand, concerns an order or judgment of the court rather than a particular action of the trial judge. Hence, a trial judge is not generally named a party to an appeal. Understandably, then, there is no rule mandating that a judge be named or be given an opportunity to respond in contempt appeals.

Curiously, it appears that at some point attorneys began including judges as parties in contempt cases (perhaps because, when researching contempt cases, most of the precedent found would have consisted of writ cases where the judge was named) and that others picked up on the practice, perhaps believing it a requirement, although no rule or case had directed as such. Likewise, this frequent practice of naming judges in contempt appeals appears to have caused some confusion in our own Court. Understandably so, as the fact that judges are so often named in contempt appeals begs the question of whether such practice is necessary. As we can find no rule or published case which so dictates, we hold that it is not.

Although there is no rule or case which would dictate such a practice, the argument still could be made that a judge must be named in a contempt appeal due to the necessary party rule, which specifies that a person is an indispensable party if "in his absence complete relief cannot be accorded among those already parties." CR 19.01. However, a judge is not a necessary party in a contempt case, as complete relief can be afforded to the parties in the judge's absence.

We take our cue from the Kentucky Supreme Court case of *Sweasy v. King's*

*Daughters Memorial Hosp.*, 771 S.W.2d 812 (Ky.1989), in holding that even if it *were* a requirement to name the judge in a contempt appeal, it would not be fatal to the appeal to fail to do so because the judge would be a party "in name only." Indeed, in *Sweasy*, the Court held that a judge was not a necessary party to a writ action, stating as follows:

> The trial judge is a party in name only. He has no interest in the outcome of the litigation, and no connection to it other than the obligation to abide by the Court of Appeals' decision. Indeed, although the trial judge is the named party, the final order of the appellate court is binding on whoever holds the office of trial judge at the time of the decision.

*Id.* at 817. Accordingly, the *Sweasy* Court held that it was not fatal to a writ action for the petitioner to fail to name the trial judge. This Court has also noted that in original actions, the real party in interest "is the person who will be adversely affected if the Petition is granted; he may respond and defend even though the trial judge does not." *Mullins v. Hess*, 131 S.W.3d 769, 772 (Ky.App.2004). Just as in writ practice, even if the trial judge were required by rule to be named in a contempt appeal, he would be a party in name only and would not be a necessary party to the appeal because relief could be granted to the contemnor even if the trial judge were no longer on the bench. Although the judge might be named as a party, the final order of this Court would be binding upon whoever holds the office of circuit judge at the time of our decision. Nonetheless, as previously stated, there is no requirement that a judge be named in a contempt appeal. We note that even if there were such a requirement, as in writ practice, it would not be fatal to the action to fail to do so. *Sweasy*, 771 S.W.2d at 817.

Accordingly, we do not dismiss the current appeal, but instead, proceed to a determination on the merits because there is no requirement that a trial judge be named in a contempt appeal.

■ Linda argues on appeal that the Crittenden Circuit Court abused its discretion when it held her in contempt without making a specific finding that she had the ability to conform to the court's order. She further alleges a due process violation for the same reason.

■ The trial courts are afforded wide latitude in the use of their contempt powers to enforce their judgments and remove any obstructions to such enforcement. *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky.1970). Indeed, trial courts have almost unlimited discretion in exercising their contempt powers and we will not disturb a trial court's exercise of its contempt powers on appeal absent an abuse of that discretion. *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky.App.2007).

■ The courts' power of contempt is separable into two distinct categories: civil and criminal. A civil contempt is a failure to do what is ordered by the court in a civil action for the benefit of an opposing party, while a criminal contempt is some action by a party that offends the dignity or authority of the court or the judge, individually, which obstructs justice or tends to bring the court into disrespect. *Tucker v. Com. ex rel. Atty. Gen.*, 299 Ky. 820, 187 S.W.2d 291, 294 (1945). The essence of criminal contempt is its intent to punish an individual for disrespect shown to the court while the essence of civil contempt is its coercive effect upon litigants to comply with court orders. *See, e.g., Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1997). The difference between the two has often been poetically described in law by the adage that one held in civil con-

tempt "carries the keys of his prison in his own pocket." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911), quoting *In Re Nevitt*, 54 C.C.A. 622, 117 F. 448 (8th Cir.1902).

In the present case, it is clear that the judge held Linda Lanham in *civil contempt*, as it was not some offensive behavior directed at the court which prompted the contempt, but rather, Linda's failure to follow court orders. Linda failed to make any payment on the debt assigned to her in the court's divorce decree, despite having the ability to do so as evidenced by her testimony that she spent at least $2,000 on a vacation during the relevant time, she spent $2,022 in February or March on bills (which were not medical bills as she represented), and she failed to bring any documentation showing that she even communicated with Chase bank regarding payment, much less a document reciting whether Chase was willing to agree to a payment plan with Linda as requested.[4]

 We recognize that "[i]f the courts are to have the power to control participants in the judicial process and effectively administer justice, the power of contempt must be more than a hollow threat." *Murphy v. Commonwealth*, 50 S.W.3d 173, 186 (Ky.2001). Because it is clear from the record that Linda flagrantly disregarded court orders, we find no abuse of discretion in the court's finding of contempt. As the trial court held Linda in contempt for "failure to comply with orders of [the] Court," we do not find the court abused its discretion in failing to make specific findings regarding Linda's ability to pay be-

cause Linda not only failed to hold Dirk harmless by failing to make payments on the debts, but she also further violated orders of the court during the pendency of this action that did not involve her failure to make payment on the debts. Rather, she was also ordered to bring appropriate documentation to the court, which she failed to do. Finally, Linda's counsel did not raise indigence as a defense at the hearing. *See Lewis v. Lewis*, 875 S.W.2d 862 (Ky.1993). Regardless, it appears that such a defense would have been unsupported by the record anyway and any failure to make specific findings thereon would have been harmless.

We note, in closing, that Linda holds the keys to her prison in her pocket, since she need only comply with the court's order by furnishing the required information in order to avoid incarceration. We hereby affirm the Crittenden Circuit Court.

ALL CONCUR.

---

4. Further, although Linda claimed she did not have enough money to pay on the Chase debt, the trial court as finder of fact could choose to believe or disbelieve this testimony. The court heard testimony suggesting that Linda had $2100 to $2200 in household income per month (including food stamps) and that she somehow managed to fund two vacations to

Florida during the relevant time period. Moreover, while Linda had the opportunity to bring in documentation to show her monthly expenses (which she alleged to be great), most of the documentation she brought to the hearing did not even have her name on it but had her landlord's name on it.