Robert MEENACH, Individually, and as the Executor of the Estate of Rita Meenach; State Farm Mutual Insurance Company, Appellants,

v.

GENERAL MOTORS CORPORATION, Appellee.

No. 94–SC–587–CL.

Supreme Court of Kentucky.

Jan. 19, 1995.

Larry C. Deener, Landrum & Shouse, Lexington, S. Samuel Griffin, Todd P. Davis, Chilton Davis Varner, King & Spalding, Atlanta, GA, Arthur P. Greenfield, Snell & Wilmer, Phoenix, AZ, for appellee.

John R. McGinnis, McBrayer, McGinnis, Leslie & Kirkland, Greenup, Robert E. Sanders, Julie L. Duncan, Robert E. Sanders & Associates, Covington, Jeffrey Morgan, Emmalena, H. Rupert Wilhoit, III, Wilhoit & Wilhoit, Falmouth, for appellant Robert Meenach.

Gail Luhn Pyle, Geralds, Moloney & Jones, Lexington, for State Farm Mut. Ins. Co.

## CERTIFICATION OF THE LAW BY SPECIAL JUSTICE BEVERLY R. STORM

This matter is before us on a request for a certification of the law from the U.S. District Court of the Eastern District of Kentucky.

The case is a products liability/negligence action which stems from a single vehicular accident that occurred in Bath County, Kentucky, when a 1990 Cadillac Seville left Interstate 64 and subsequently caught fire and burned. The driver of the vehicle, Rita Meenach, was unable to exit the vehicle and received severe burn injuries resulting in her death; her two sisters and her mother, who were passengers in the vehicle, escaped and were not injured. The Plaintiffs allege that design and manufacturing defects in the Cadillac were substantial factors in causing the fire and in trapping Ms. Meenach in the burning vehicle. The Cadillac's manufacturer, General Motors, vigorously denies these allegations.

In the course of discovery attendant to the litigation, the Plaintiffs notified the Defendant, General Motors, of their intent to call as an "expert and/or fact witness" one Ronald E. Elwell, a former General Motors engineer and litigation consultant. In response, General Motors moved the Court for a Protective Order to prohibit Ronald Elwell from testifying as either an expert witness or fact witness on the grounds that a Michigan state court had previously permanently enjoined Elwell from testifying in any case against General Motors. General Motors argued that a Kentucky Court was obligated by the Full Faith and Credit Clause of the United States Constitution (Article IV, § 1) to enforce the Michigan injunction and prohibit Elwell from testifying for the Plaintiffs in this case.

While the facts surrounding the entry of the Michigan state court injunction are largely undisputed, the spin given the facts by the two parties are in direct conflict. Elwell, who worked on automobile fuel-systems for General Motors and assisted in the defense of General Motors in post-collision fire litigation, is either a "whistle-blower" who General Motors has attempted to silence through an "agreed" injunction or a "turncoat" who accepted valuable consideration in settlement of his wrongful discharge claim who now seeks to damage his former employer by divulging privileged and proprietary information.

While the complete record of the Michigan case has not been provided, we can glean from the documents we have that Elwell was a General Motors engineer who designed and analyzed vehicle fuel systems and was an integral part of an "in-house litigation defense team" who testified for his employer in at least 80 civil actions and was afforded access to proprietary information as well as privileged attorney/client communications and work product.

Either because he was unwilling to continue to provide such assistance to General Motors after he discovered that vital information had been withheld from him, which made his prior testimony untruthful (Plaintiffs' version), or because he had disagreements with his supervisors and was disgruntled over his retirement and severance package (General Motors' version), in 1991, Elwell retained his own attorney and testified against General Motors in a pending products liability case in a markedly different manner than when he was in General Motors' employ.[1] Elwell also filed suit against General Motors in the Circuit Court of Wayne County, Michigan, alleging wrongful discharge and other tort and contract claims. General Motors filed a counterclaim against Elwell alleging breach of fiduciary duty for his disclosure of privileged and confidential information and his misappropriation of documents. General Motors sought a preliminary injunction and after a brief hearing, the Court granted a preliminary injunction which prohibited Elwell from:

> consulting or discussing with or disclosing to any person any of General Motors Corporation's trade secrets, confidential information or matters of attorney-client work product relating in any manner to the subject matter of any products liability litigation whether already filed or filed in the future which Ronald Elwell received, had knowledge of, or was entrusted with during his employment with General Motors Corporation.

Subsequently, General Motors and Elwell settled their disagreements. As part of the settlement and dismissal of the litigation, an "agreed" or "stipulated" permanent injunction was entered in the Wayne County Circuit Court which was considerably broader then the preliminary injunction. This injunction prohibited Elwell from:

> testifying, without the prior written consent of General Motors Corporation, either upon deposition or trial, as an expert witness, or as a witness of any kind, and from consulting with attorneys or their agents in any litigation already filed, or to be filed in

the future, involving General Motors Corporation as an owner, seller, manufacturer and/or designer of the product(s) in issue.

Since the entry of this injunction, several state and federal courts have denied General Motors' objections to Elwell testifying for Plaintiffs in various product liability cases on a variety of grounds, including the Kentucky Court of Appeals in an unpublished decision.[2] Other state and federal courts have enforced the Michigan injunction holding that the Full Faith and Credit Clause of the United States Constitution required it.

The U.S. District Court in this case initially granted General Motors' Motion for a Protective Order, ruling that the permanent injunction entered in the Wayne County Circuit Court was entitled to enforcement in Kentucky, and barred Elwell's testimony. The Plaintiffs unsuccessfully argued before the District Court the preclusive effect of the unpublished Kentucky Court of Appeals opinion in *Carpenter v. King* and that Kentucky "public policy" of free access to "everyman's evidence" mandated that the Michigan injunction not be recognized.

Subsequently, the Court, at Plaintiffs' request, decided this issue should be decided as a matter of state law, and requested certification of the law as to the following issues:

1) Is the permanent injunction entered by a Michigan state court in *Elwell v. General Motors Corporation,* Circuit Court for Wayne County, Michigan, Case No. 91–115946 NZ, on August 26, 1992, entitled to full faith and credit, under Article IV, § 1 of the United States Constitution, in Kentucky, thereby precluding Ronald E. Elwell from testifying in this action?

2) If so, is a Kentucky court authorized to modify the Michigan injunction for the purpose of allowing Ronald Elwell to testify in this action without violating the foregoing Full Faith and Credit Clause of the United States Constitution?

---

1. *Moseley v. General Motors Corp.,* No. 90V–6276 (Fulton Cty. Ct., Ga.).

2. *Carpenter, et al. v. King and General Motors Corp.,* 93–CA–1788–OA.

For purposes of our answer, we combine the questions and hold that a Kentucky Court may permit Ronald Elwell to testify in this case without offending the Full Faith and Credit Clause.

We begin our analysis with the Full Faith and Credit Clause. Article IV, § 1 of the United States Constitution provides that,

> Full Faith and Credit shall be given in each state to the public Acts, Records and Judicial Proceedings of every other State.

Congress by the Act of May 26, 1790, c 11, as amended, R.S. § 905, 28 U.S.C. § 687 has further provided that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

■ Thus, while the general rule is that the judgment of a sister state be given full credit in the forum state, a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947).

In *Halvey*, the U.S. Supreme Court had to decide whether a New York state court violated the Full Faith and Credit Clause by ordering the modification of a Florida state custody Order to grant the husband certain visitation rights with his son. In holding that it did not, the Supreme Court first noted that Florida custody decrees were not irrevocable or unchangeable and that under Florida law were modifiable based upon new evidence or a change of circumstances and that, "so far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do." *Id.* at 614, 67 S.Ct. at 906.

> Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered [cite omitted], it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it or to depart from it as the State where it was rendered. *Id.* at 615, 67 S.Ct. at 906.

Thus, the Supreme Court of the United States has construed the Full Faith and Credit Clause to require other states to give judgments only as much effect as they have in the state where they are rendered; it does not require them to give more.

■ General Motors tacitly concedes that the Michigan state injunction in this case is modifiable. In an effort to bolster the injunction's efficacy, General Motors argues that the Wayne County Circuit Court has twice denied motions to modify the injunction—one brought by Elwell himself and one brought by "the media." The fact that such previous attempts at modification were denied on the merits is surely evidence that, upon proper application, a modification of the injunction could be granted by the Michigan court. We conclude that the Full Faith and Credit Clause, as construed by *Halvey, supra*, would permit a Kentucky Court to modify the Michigan injunction.

■ General Motors also argues that *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 575 N.E.2d 116 (1991), which affirmed a permanent injunction prohibiting a former AMC/Chrysler employee from ever testifying against AMC/Chrysler and *Jeep Corp. v. Sanders*, 546 So.2d 1098 (Fla.Dist. Ct.App.1989), which enforced that injunction against non-parties, is persuasive that the similar injunction here should be recognized by Kentucky courts. However, *Huffstutler* is distinguishable from this case because the employee, Huffstutler, was an attorney and in carrying out his duties for Jeep functioned as such. The necessity and power of a court to protect a party from its former lawyer is far broader than the Full Faith and Credit Clause. Kentucky clearly recognizes that draconian measures are authorized when attorney misconduct has occurred or may occur in the future. *Shoney's Inc. v. Lewis*, Ky., 875 S.W.2d 514 (1994), (disqualification of Plaintiffs' law firm and suppression of information obtained necessary to protect Defendant from attorney's unauthorized contact with managerial employees).

■ We do not disregard General Motors' concern that Elwell, if permitted to testify, may seek to divulge information

which would be protected from discovery in this case. We are also mindful of the agreed stipulation signed by Elwell that it is "extremely difficult for [him] to determine whether his knowledge with respect to General Motors only comes from attorney/client and work product communications or from non-privileged communications." However, broad claims of "privilege" are disfavored when balanced against the need for litigants to have access to relevant or material evidence. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). It is apparent that Elwell possesses at least some non-protected information, General Motors' claims of attorney/client, proprietary and work-product notwithstanding. For example, we note that what is protected from discovery by the work-product or privilege doctrines in one case is not necessarily protected by those doctrines in *subsequent* litigation. *Terrell v. Western Casualty & Surety Co.*, Ky., 427 S.W.2d 825 (1968).

▆▆ When an action in law is pending in a Kentucky court, neither the Full Faith and Credit Clause nor rules of comity require compulsory recognition of an injunction issued in another jurisdiction. *See* 42 Am Jur 2d, Injunctions, Sec. 227, and cases cited therein. Factual information appropriately discoverable from a party through deposing an employee or former employee must be differentiated from mental impressions and advice protected by the attorney-client privilege, trial preparation materials protected by the work-product rule as covered by CR 26.02, and trade secrets. The trial court can and must be depended upon to differentiate between legitimate claims of privilege and withholding information simply because it is or may lead to incriminating information which should be discoverable.

When confronted with a similar problem in *Nazareth Literary & Benevolent Inst. v. Stephenson*, Ky., 503 S.W.2d 177, 178–89 (1973), this Court rejected a policy argument to "engraft an exception to the procedural rules for discovery" to protect information gathered in the course of hospital administration, stating:

> Although this might be regarded as an initially appealing argument, on reflection, one might well debate wherein the public interest lies. Claims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively few instances in the common law.

*Williams v. General Motors Corp.*, 147 F.R.D. 270 (S.D.Ga.1993), involved deposing the same Ronald Elwell and the same questions as involved in this case, and reached the same conclusions as we do here: the public interest would not be served by a blanket prohibition as to matters not within the scope of the attorney/client or work-product privilege, or which do not involve divulging trade secrets.

> Any interest GM might have in silencing Elwell as to unprivileged or non-trade-secret matters is outweighed by the public interest in full and fair discovery. *Id. at 273.*

▆▆ Where, as here, the Plaintiffs have made the requisite showing under Rule 26 that Elwell has relevant information that may lead to admissible evidence at trial, we hold that the Court may modify the Michigan injunction and permit Elwell's discovery deposition and/or testimony at trial. We are confident that the trial court, in modifying the Michigan injunction, will fashion a remedy to allow General Motors to protect its interests, including perhaps imposing confidentiality orders allowing General Motors to raise specific claims of privilege to specific questions actually posed in the deposition or conducting *in camera* inspections of those portions of the transcript claimed to be protected by General Motors.

We cannot, on the record before us, decide whether Elwell is a "whistle-blower" whose silence is sought in order to protect corporate misfeasance, or a "turncoat" determined to extract further tribute from a former employer seeking only to protect its legitimate interests. These questions are for the trial court and the trier of fact to determine. We hold only that the District Court may modify the Michigan injunction so as to permit the Plaintiffs access to non-protected relevant facts in the possession of Elwell, while affording General Motors an opportunity to

raise specific objections based upon specific and legitimate claims of privilege.

IT IS SO CERTIFIED.

STEPHENS, C.J., and LAMBERT, LEIBSON, and STUMBO, JJ., concur.

REYNOLDS, J., concurs in result only.

SPAIN, J., dissents without a separate opinion.

WINTERSHEIMER, J., not sitting.