SISTERS OF CHARITY HEALTH SYS-
TEMS, INC., d/b/a Flaget Memorial
Hospital, Appellant,

v.

Larry D. RAIKES, Judge, Nelson
Circuit Court, Appellee.

Gary D. Dones and Robert Huxol, M.D.,
Real Parties in Interest.

Robert Huxol, D.O., Appellant,

v.

Larry D. Raikes, Judge, Nelson
Circuit Court, Appellee.

Gary D. Dones and Sisters of Charity
Health Systems, D/B/A Flaget Memorial
Hospital, Real Parties in Interest.

Baptist Healthcare System, Inc., d/b/a Tri–
County Health Community Hospital;
Baptist Healthcare System, Inc., D/B/A
Baptist Hospital East, as an Unincorpo-
rated Division of BHI Corporate Com-
plex, Appellants,

v.

William E. McAnulty, Jr., Judge,
Jefferson Circuit Court,
Appellee.

Marcie L. Hinton, Individually and as Ad-
ministratrix of the Estate of Seth War-
ren Hinton and Jeffrey C. Hinton, Real
Parties in Interest.

Nos. 97–SC–118–MR, 97–SC–124–
MR and 97–SC–205–MR.

Supreme Court of Kentucky.

Sept. 3, 1998.

Rehearing Denied Feb. 18, 1999.

As Amended March 3, 1999.

William A. Hoskins, III, Jackson & Kelly, Lexington, Jann B. Logsdon, David R. Monohan, C. Dean Furman, Rebecca L. Didat, Woodward, Hobson & Fulton, L.L.P., Louisville, for Sisters of Charity Health Systems, Inc., d/b/a Flaget Memorial Hospital, in case no. 97-SC-118-MR.

W. Gregory King, Ogden, Newell & Welch, Louisville, for Robert Huxol, M.D.

Larry D. Raikes, Judge, Nelson Circuit Court, Bardstown, pro se, in case no. 97-SC-118-MR and 97-SC-124-MR.

W. Gregory King, Tracy S. Prewitt, Ogden Newell & Welch, Louisville, for Robert Huxol, D.O.

James W. Bryant, Louisville, for Gary D. Dones in case no. 97-SC-118-MR and 97-SC-124-MR.

William A. Hoskins, III, Jackson & Kelly, Lexington, John Douglas Hubbard, Fulton, Hubbard & Hubbard, Bardstown, Jann B. Logsdon, David R. Monohan, C. Dean Furman, Rebecca L. Didat, Woodward, Hobson & Fulton, Louisville, for Sisters of Charity Health Systems, d/b/a Flaget Memorial Hospital, in case no. 97-SC-124-MR.

Stephen R. Price, Sr., Carole D. Christian, Wyatt, Tarrant & Combs, Louisville, for Amicus Curiae, Kentucky Hospital Association, in case no. 97-SC-124-MR and 97-SC-205-MR.

William O. Guethlein, William P. Swain, Boehl Stopher & Graves, Louisville, for Baptist Healthcare System, Inc., d/b/a Tri–County Health Community Hospital.

Judge William E. McAnulty, Jr., Jefferson Circuit Court, Louisville, pro se.

Charles D. Greenwell, Dennis D. Murrell, Nancy J. Schook, Middleton & Reutlinger, Louisville, for Marcie L. Hinton, Individually and as Administratrix of the Estate of Seth Warren Hinton.

Charles D. Greenwell, Dennis D. Murrell, Nancy J. Schook, Middleton & Reutlinger, Louisville, for Jeffrey C. Hinton.

John E. Spainhour, Jr., Special Counsel, Shepherdsville, for Amicus Curiae, Kentucky Academy of Trial Attorneys.

JOHNSTONE, Justice.

These cases were combined and heard together. All three cases come to us on appeal, as a matter of right, from a ruling of the Court of Appeals denying Appellants' petitions for a writ of prohibition. Specifically, Appellants in each case seek to prohibit the trial court from enforcing an order compelling discovery of peer review records in an underlying medical malpractice suit. The issue presented in all three cases is whether the peer review privilege of KRS 311.377(2) prohibits discovery of peer review records and material in medical malpractice suits. We find that the privilege does not extend to medical malpractice suits and affirm the Court of Appeals.

The issue before the Court is to be decided as a matter of law. Thus, the facts of the underlying suits are not necessary to our determination of the issue at bar. However, we note one factual difference. Appellant Huxol argues that Judge Raikes did not attach a protective order to the order compelling discovery. On the other hand, Judge

McAnulty's order compelling discovery provides that, "Any and all peer review records shall be kept confidential. Distribution to anyone other than counsel is prohibited. Any such records submitted to [the] court file are to be kept under seal." We note that Huxol does not argue that Judge Raikes denied a motion to attach a protective order to the order compelling discovery, or that he, Huxol, ever made such a motion. Thus, we clarify that a trial court's refusal to grant a protective order for peer review material released pursuant to a discovery request is not at issue in any of these cases.

## WRIT OF PROHIBITION

■ Appellees argue that a writ of prohibition is not an appropriate remedy. These cases come to us on appeal from a denial of the writ by the Court of Appeals. The decision whether to grant a writ of prohibition is entrusted to the sound discretion of the court. *Southeastern United Medigroup, Inc. v. Hughes*, Ky., 952 S.W.2d 195, 199 (1997). However, because the issue presented is one of law, our review of the appropriateness of the writ is not limited to an abuse of discretion standard. *Id.*

■ A writ of prohibition is an extraordinary remedy, and we have always been cautious and conservative both in entertaining petitions for and in granting such relief. *Bender v. Eaton*, Ky., 343 S.W.2d 799, 800 (1961). In order for a writ of prohibition to be appropriate in cases where jurisdiction is not challenged, a petitioner must show that: (1) he would have no adequate remedy on appeal; and (2) he would suffer great and irreparable injury if the trial court is acting in error and the writ is denied. *Id.* at 801. However, the showing of great and irreparable injury is not absolutely necessary. *Id.*

[I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer great and irreparable injury.

*Id.* (emphasis in original).

At issue in *Bender* was whether the defendants-respondents could discover medical records and reports created by physicians, who had been consulted by the plaintiffs-petitioners in preparation for their underlying personal injury suit. *Id.* at 802. The *Bender* Court found that the petitioners had no remedy on appeal because, "[t]he injury suffered by petitioners, assuming their adversaries have no right to this disclosure under the Civil Rules, will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case." *Id.* at 802. Assuming that KRS 311.377 prevents disclosure of peer review material in the case at bar, we find that Appellants likewise have no adequate remedy on appeal. *See Adventist Health Systems v. Trude*, Ky., 880 S.W.2d 539, 541–42 (1994).

To show that they will suffer great and irreparable harm, Appellants argue that peer reviewers will be less candid if they know their views will be subject to discovery in medical malpractice suits. However, it has been the law of the Commonwealth for the past twenty-five years that peer review material *is* discoverable in medical malpractice suits. Thus, peer review participants have no present, valid expectation that their input into peer review proceedings will be shielded from discovery in a medical malpractice suit. In essence, Appellants' arguments show what there is to gain from the granting of the writ, not what there is to lose if the writ is not granted.

The *Bender* Court found public policy to be the most compelling reason to entertain the writ, even though the petitioners had not met the second prong of the test. "[T]he proper construction and application of the Rule in question ... is important to the orderly administration of our Civil Rules .... Under these circumstances, a decision would be of value to the Bench and Bar of Kentucky." *Id.* at 802. We find similar concerns in the issue presented in the cases at bar.

Despite five published cases, which span a quarter of a century and which all hold that peer review material is discoverable in medical malpractice suits, the issue continues to be litigated again and again at both the trial and the appellate levels in the Commonwealth. We find that an unequivocal decision on this issue necessitates a clear expression of our view. *See Nazareth Literary & Benevolent Institution v. Stephenson,* Ky., 503 S.W.2d 177, 178 (1973).

## THE SECTION 51 PROBLEM

The controversy before us in these cases arises from the misreading or the misapplication of our precedent concerning whether KRS 311.377 prevents discovery of peer review documents and records in medical malpractice suits. The confusion stems from our decision in *Sweasy v. King's Daughters Memorial Hospital,* Ky., 771 S.W.2d 812 (1989). However, to fully explain the origin of this confusion, we begin with the earlier case of *McGuffey v. Hall,* Ky., 557 S.W.2d 401 (1977).

In 1976, the General Assembly amended KRS 311.377 in Section 9 of a bill entitled, "AN ACT relating to health care malpractice insurance claims." 1976 Ky. Acts, ch. 163. These amendments contained a privilege for peer review material and created the statute in substantially its present form.

In two combined declaratory judgment actions, the Franklin Circuit Court declared the 1976 Act unconstitutional. The judgment of the trial court was affirmed in *McGuffey, supra.* The *McGuffey* Court found, *inter alia,* that the subject-matter of Section 9 was not sufficiently related to the title of the Act, and, thus, violated Section 51 of the Kentucky Constitution.[1] *McGuffey,* 557 S.W.2d at 407.

In its analysis of the Section 51 issue, the *McGuffey* Court first determined that the title of the Act limited the subject matter of the Act to those subjects which had some reasonable relationship to medical malpractice claims or insurance. *Id.* at 406. It then construed the statute:

Although conduct that results in a malpractice claim may also eventuate in a peer review proceeding, the relationship between the two is purely coincidental. A peer review is not designed to serve any purpose of a malpractice claim, and to the extent that the confidentiality conferred upon it serves to protect those who participate in the proceedings, it is a protection against suits for defamation, not malpractice.

*Id.* at 407. Thus, the *McGuffey* Court's construction of the statute was that the peer review privilege did *not* apply to medical malpractice suits. It then found that the statute was unconstitutional on its face because the statute had no reasonable relationship to medical malpractice claims or malpractice insurance. *Id.*

Presumably in response to the *McGuffey* decision, in 1980, the General Assembly reenacted KRS 311.377 in Section 33 of a new act entitled, "AN ACT relating to the establishment of certificate of need, licensing and regulation of health facilities and health services." 1980 Ky. Acts, ch. 135. There were no changes made to the text of the statute. We addressed the issue of whether the peer review privilege of the 1980 version of the statute prevented discovery of peer review material in a medical malpractice suit in *Sweasy, supra.*

Unlike *McGuffey,* in which the constitutionality of the 1976 version of the statute was the only issue at bar, at issue in *Sweasy* were both the constitutionality and the application of the 1980 version of the statute. *Sweasy,* 771 S.W.2d at 816. It is important to note that the *Sweasy* Court did not construe the statute as applying to medical malpractice suits. Rather, the *Sweasy* Court only made the assumption that the statute applied to medical malpractice suits in order to analyze the constitutional issue. *Id.* at 813. ("With the possible exception of Section 33 (*if interpreted to include a patient's malpractice action* ), all thirty-five sections of the 1980 Act relate exclusively to the procedures described in the title.") (Emphasis added).

1. Section 51 provides in relevant part that, "No law enacted by the General Assembly shall relate

to more than one subject, and that [subject] shall be expressed in the title . . . ."

This point is important to understanding the correct interpretation of *Sweasy*'s holding:

The trial court correctly stated that the language of *McGuffey v. Hall* must mean either that the confidentiality privilege expressed in Section 2 of KRS 311.377 is limited to suits against peer review entities as referred to and protected against in Section 1 of the statute, or it violates Kentucky Const. Section 51. In either case, the trial court has correctly applied the mandate of our Court in *McGuffey v. Hall*, and the Court of Appeals ignored that mandate in an Order giving no reasons.

*Id.* at 816.

Thus, the *Sweasy* Court's construction of KRS 311.377(2) is consistent with the *McGuffey* Court's construction of the statute. But unlike the *McGuffey* Court, the *Sweasy* Court did not find that the 1980 version of the statute was unconstitutional on its face; rather, it found that the statute *would* violate Section 51 of the Kentucky Constitution *if* it was applied to medical malpractice suits.

In response to the *Sweasy* decision, the General Assembly reenacted KRS 311.377 in 1990 under a new title without changing any of the text of the statute.[2] Apparently, the General Assembly mistakenly interpreted *Sweasy* as holding that the statute was unconstitutional on its face. We can find no other explanation to the Preamble of the 1990 Act, which begins, "WHEREAS, the protection afforded to peer review participants for review functions ... has been eliminated·by the Supreme Court's decision in *Sweasy v. King's Daughters Memorial Hospital*, Ky., 771 S.W.2d 812 (1989) ...." 1990 Ky. Acts, ch. 271. *Sweasy* clearly did not eliminate the peer review privilege of KRS 311.377(2). At most, *Sweasy* limited the scope of the privilege.

Appellants give *Sweasy* the same mistaken interpretation. At the heart of Appellants'

argument is that *McGuffey* and *Sweasy* both held that KRS 311.377 was unconstitutional, and, thus, the 1990 reenactment of KRS 311.377 gives us the opportunity to interpret the statute *de novo*. However, as shown, *Sweasy* did *not* hold that the statute was unconstitutional. Rather, the *Sweasy* Court relied on the *McGuffey* Court's construction of the statute to reach the holding that the privilege of Subsection 2 of the statute was limited to suits against peer review entities described in Subsection 1 of the statute. Thus, in order to reverse the Court of Appeals, we would have to overrule *Sweasy* and its construction of the statute.

While we disagree with Appellants that *McGuffey* and *Sweasy* have no application to the construction of the 1990 version of the statute, we do agree that those cases have no application to the constitutionality of the 1990 version of the statute. Because our decision rests entirely on statutory construction, we have no cause to reach the constitutional question. *Rice v. Walls*, 213 F.2d 693, 697 (6th Cir.1954).

## THE SCOPE OF THE PRIVILEGE CREATED BY KRS 311.377

■ KRS 311.377(2) clearly creates a privilege for peer review material.[3] The issue at bar only concerns the scope of the statute's privilege.

■ We begin our analysis with the nearly universal rule that privileges should be strictly construed, because they contravene the fundamental principle that "the public ... has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 45, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980), quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). Or, as we have stated recently, "broad claims of 'privilege' are disfavored when bal-

---

2. The prior version of KRS 311.377 reenacted in 1990 was not the 1980 version of the statute. The General Assembly again amended the statute in 1988. However, for the purposes of this discussion, the 1988 amendments to the statute did not create any substantive changes in the text of the statute.

3. We note that because KRS 311.377 was in effect prior to the effective date of the Kentucky Rules of Evidence, the peer review privilege at issue is clearly a privilege that is "otherwise provided by statute" as referred to in KRE 501. Thus, we are not presented with the issue of whether a statutory privilege enacted after the effective date of the KRE violates this Court's rule making authority under KRE 1102.

anced against the need for litigants to have access to relevant or material evidence." *Meenach v. General Motors Corp.*, Ky., 891 S.W.2d 398, 402 (1995), citing *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Thus, claims of privilege are carefully scrutinized. *Nazareth*, 503 S.W.2d at 179 (1973). Moreover, the burden of proving that a privilege applies rests on the party claiming its benefit. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 505, p. 229 (3d ed. Michie 1993).

Another reason for caution in construing the scope of the privilege afforded by KRS 311.377 is that Appellees' right to bring suit for their underlying medical malpractice claims is protected by Section 14 of the Kentucky Constitution. While the right to discover and present evidence is not likewise expressly protected by the Constitution, significant degradation of these rights could deny litigants, in an action protected by Section 14, due course of law as provided by that section. Appellees did not argue that the peer review privilege violates Section 14, and our holding does not rest on constitutional grounds. Our purpose in making this point is to emphasize that the creation of privilege carries with it potential constitutional implications.

■ Balanced against a necessarily narrow construction of statutory privilege is "[t]he principal rule of statutory construction ... that the applicability and scope of a statute may be determined by ascertaining the intent and purpose of the legislature and by considering the evil which the law is intended to remedy...." *Mitchell v. Kentucky Farm Bureau Company*, Ky., 927 S.W.2d 343, 346 (1996), overruled on other grounds, *Nantz v. Lexington Lincoln Mercury Subaru*, Ky., 947 S.W.2d 36 (1997).

We have no doubt that in creating a peer review privilege, the General Assembly's intent and purpose was *not* to hinder an aggrieved patient's search for the truth in a medical malpractice suit against a negligent physician or hospital. The Preamble to the 1990 Act plainly states that it was enacted for the protection of peer review participants. Appellants, in their capacity in the cases at bar as party-defendants in a medical malpractice suit, are not included in this class because they have not been sued for any action taken in the course of performing a peer review. Simply put, the statute was not enacted for the protection of defendants in a medical malpractice suit. Nonetheless, Appellants argue that the plain language of the statute allows them to use the privilege to their advantage. We disagree.

Subsection 1 of KRS 311.377 provides, *inter alia*, that any person who applies for, or is granted, staff privileges by certain licensed health service organizations, *e.g.*, a hospital, is deemed to have waived any claim for damages against the hospital or its designees for good faith actions taken pursuant to a peer review proceeding. Thus, the subject matter of Subsection 1 is concerned with: (1) limiting the legal rights and remedies of those persons who apply for or are granted staff privileges; and (2) protecting licensed health services organizations from being sued for good faith actions made in the performance of a peer review function. Therefore, because Appellants have not been sued for any action taken in the course of performing a peer review, Subsection 1 has no application to Appellants. And, obviously, Appellees have not waived their right to sue Appellants pursuant to Subsection 1. Thus, KRS 311.377(1) applies to neither Appellants nor Appellees.

Subsection 2 provides, *inter alia*, that all proceedings, records, opinions, conclusions and recommendations of any entity performing a peer review function referred to in Section 1 of the statute "shall be confidential and privileged and shall not be subject to discovery ... in any civil action in any court." In light of the purpose and intent of the peer review privilege to protect peer review participants, it is reasonable to conclude that the General Assembly intended that the subject matter of Subsection 2 should be no broader in scope than the subject matter of Subsection 1. That is, the purpose of Subsection 2 is to: (1) further limit the legal rights of those persons who apply for or are granted staff privileges as described is Subsection 1; and (2) provide further legal protection to the entities described in Subsection 1 for good faith actions

taken in the performance of a peer review function. Thus, KRS 311.377(2) likewise applies to neither Appellants nor Appellees. And thus, the privilege of Subsection 2 has no application to medical malpractice suits.

Moreover, we have often stated that statutes will not be given a strict or literal reading where to do so would lead to an unreasonable result. *Wesley v. Board of Education of Nicholas County*, Ky., 403 S.W.2d 28, 30 (1966). Appellants' construction of the statute is that KRS 311.377(2) creates an absolute privilege for peer review material. In the cases at bar, an absolute privilege tilts the legal playing field against Appellees, who have not waived any rights pursuant to the statute, to the advantage of Appellants, who, as defendants in a medical malpractice suit, were not intended to benefit from the statute's privilege. Such a result is clearly unreasonable.

Finally, the language which the dissenting opinion relies upon, *viz:* "shall not be subject to discovery, subpoena, or introduction into evidence, in any civil action in any court ..." has been included unchanged in KRS 311.377 since 1976. 1976 Ky. Acts, ch. 163, § 9(2). After we held in a unanimous opinion in *McGuffey v. Hall, supra,* that the language in question had no application to medical malpractice suits, 557 S.W.2d at 407, the 1980 General Assembly reenacted KRS 311.177(2) verbatim. 1980 Ky. Acts, ch. 135, § 32(2). We reaffirmed the *McGuffey* Court's interpretation of the language in question contained in the 1980 statute in *Sweasy,* 771 S.W.2d at 816. The statute was reenacted in 1988, 1988 Ky. Acts, ch. 224, § 22, and yet again in 1990, 1990 Ky. Acts, ch. 271, § 1, without any changes to the operative language. By thrice reenacting KRS 311.377(2) without any alteration to the language in question, the General Assembly is presumed to have adopted the construction given to that language in *McGuffey v. Hall, supra. Butler v. Groce,* Ky., 880 S.W.2d 547 (1994); *Cawood v. Coleman,* 294 Ky. 858, 172 S.W.2d 548 (1943); *Ray v. Spiers,* 281 Ky. 549, 136 S.W.2d 750 (1940).

While we agree with the dissent that the General Assembly could have enacted a statute extending the peer review privilege to medical malpractice actions, the fact remains that it did not. Rather, on the basis of the authority cited in the preceding paragraph, we conclude that the General Assembly has, in fact, adopted the interpretation given to KRS 311.377(2) by this Court in *McGuffey v. Hall.*

Therefore, we hold that the peer review privilege created by KRS 311.377(2) is limited to suits against peer review entities as referred to and protected against in Subsection 1 of the statute. This construction of the statute is exemplified by our decision in *Adventist Health Systems v. Trude,* Ky., 880 S.W.2d 539 (1994).

*Adventist* concerned a doctor who sued a hospital to rescind his resignation, to obtain reinstatement to the hospital's medical staff, and to recover damages stemming from the summary suspension of his medical staff privileges. *Id.* at 540. He sought to discover peer review material from the hospital in the preparation of his case. *Id.* at 540–41. The trial court ordered discovery of the peer review material. *Id.* at 541. The hospital filed for a writ of prohibition with the Court of Appeals, which writ was denied. *Id.* Thus, the underlying suit in *Adventist* was between a physician, who had waived legal rights under Subsection 1 of KRS 311 .377, and a peer review entity, which was described in and afforded certain legal protections by Subsection 1.

The *Adventist* Court found that the peer review material was protected from discovery by KRS 311.377 and reversed the Court of Appeals, stating, "[t]herefore, we find that the statute applies to any civil action, including the pending case." *Id.* at 542. In other words, the *Adventist* Court held that the statute is not limited to defamation cases as was stated by the *McGuffey* Court. *See McGuffey,* 557 S.W.2d at 407. In *Leanhart v. Humana, Inc.,* Ky., 933 S.W.2d 820 (1996), we clearly stated that *Adventist* did not overrule by implication our prior cases that hold that peer review material ·is discoverable in medical malpractice suits. *Id.* at 821. Appellants, however, argue forcefully that this discussion in *Leanhart* was dicta and has no legal effect.

We find no compelling reason to address this issue. However, for the sake of clarity, to the extent it may be inconsistent with this opinion, we, again, overrule *Adventist.*

For the foregoing reasons, the decisions of the Court of Appeals denying Appellants' petitions for a writ of prohibition are hereby affirmed.

COOPER, GRAVES, STUMBO, and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion, with Special Justice LARRY NOE joining that dissent.

LAMBERT, J., not sitting.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent.

For the better part of a quarter century the Kentucky General Assembly has unsuccessfully sought, in one form or another, to enact legislation that would keep confidential the records generated in what is commonly referred to as the peer review process. These attempts have failed due to this Court's interpretation of the various laws intended to accomplish this goal. The majority opinion continues along this unfortunate path by limiting the protection offered by the present version of KRS 311.377, applying this privilege only when an action is brought directly against the peer review entity. This approach is in violation of the established principles of statutory construction. It is for this reason that I must respectfully dissent from the majority's view.

## I. KRS 311.377

Any person who applies for, or is granted staff privileges after June 17, 1978, by any health services organization subject to licensing under the certificate of need licensure provisions of KRS Chapter 216B, shall be deemed to have waived as a condition of such application or grant, any claim for damages for any good faith action taken by any person who is a member, participant in or employee of or who furnishes information, professional counsel, or services to any committee, board, commission, or other entity which is duly constituted by

any licensed hospital, licensed hospice, licensed home health agency, health insurer, health maintenance organization, health services corporation, organized medical staff, medical society, or association affiliated with the American Medical Association, American Podiatry Association, American Dental Association, American Osteopathic Association, or the American Hospital Association, or a medical care foundation affiliated with such a medical society or association, or governmental or quasi-governmental agency when such entity is performing the designated function of review of credentials or retrospective review and evaluation of the competency of professional acts or conduct of other health care personnel. This subsection shall have equal application to, and the waiver be effective for, those persons who, subsequent to June 17, 1978, continue to exercise staff privileges previously granted by any such health services organization.

KRS 311.377(1) (1990).

As I read subsection 1 of KRS 311.377, any person who applies for staff privileges waives "any claim for damages for any good faith action" performed by a participant in the peer review process. In other words, any person who acts as part of the peer review process acquires qualified immunity for his actions to that end.

At all times in performing a designated professional review function, the proceedings, records, opinions, conclusions, and recommendations of any committee, board, commission, medical staff, professional standards review organization, or other entity, as referred to in subsection (1) of this section shall be confidential and privileged and *shall not be subject to discovery, subpoena, or introduction into evidence, in any civil action in any court* or in any administrative proceeding before any board, body, or committee, whether federal, state, county, or city, except as specifically provided with regard to the board in KRS 311.605(2). This subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation.

KRS 311.377(2)(emphasis added).

Subsection 2 of KRS 311.377 deals with the same subject matter as subsection 1, but

it has nothing to do with the qualified grant of immunity of the first subsection. Rather, the purpose of this paragraph is to make all records of the peer review process confidential, with the single stated exception as per KRS 311.605(2) [1]. For reasons which shall be explored in detail below, I believe that the majority's interpretation of KRS 311.377 errs in its belief that subsection 2 creates a privilege for peer review materials which only applies in the very limited context of lawsuits against the participant in the peer review process. Under the majority reading of subsection 1, all persons who subject themselves to peer review waive their right to sue persons involved in the peer review process. Therefore, subsection 2 protections only apply in the limited number of cases in which a physician accuses a peer review panel of acting in bad faith. Under the normal principles of statutory interpretation, if possible, no subsection of a law should be interpreted so as to render it meaningless. *Brooks v. Meyers,* Ky., 279 S.W.2d 764, 766 (1955). Yet this is precisely what the majority opinion does in this case.

To understand the statute in question, I will engage in a brief review of the cases of this Court dealing with the confidentiality of peer review materials.

## II. Kentucky Jurisprudence of the Confidentiality of Peer Review Materials

The first case in which this Court addressed the issue of peer review and confidentiality was in *Nazareth Literary & Benevolent Institution v. Stephenson,* Ky., 503 S.W.2d 177 (1973). In *Nazareth,* no statutory authority protecting peer review material existed. The hospital argued that as a matter of public policy, peer review records must be kept confidential because their "revelation would impede the freedom of communication between physicians and hospital authorities

concerning proper methods of treatment and the corrections of mistakes." *Id.* at 178. The Court responded to this claim by stating that "[c]laims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively few instances in the common law." *Id.* at 179. Accordingly, the Court held that there was no privilege in the common law for peer review and no basis had been offered which could support the creation of such a privilege.

The issue of peer review confidentiality next surfaced in the case of *McGuffey v. Hall,* Ky., 557 S.W.2d 401 (1977). The constitutionality of an amendment to KRS 311.377 which purported to protect peer review material from "discovery ... in any civil action in any court" was challenged. KRS 311.377 (1976). *McGuffey* differs materially from *Nazareth,* in that instead of merely asserting a common law privilege based on public policy considerations, *McGuffey* involved a statutory enactment of a privilege by the General Assembly. However, the *McGuffey* court struck the peer review privilege because it found that "the subject-matter of the Act [which contained the privilege] is not sufficiently related to malpractice claims or insurance" to pass constitutional muster under section 51 of the Kentucky Constitution.[2] *Id.* at 407.

In 1980 the General Assembly attempted to re-enact the legislation which had been struck by *McGuffey.* 1980 Ky. Acts Ch. 135. The text was identical to that of the 1976 enactment of KRS 311 .377. The title of the act which sought to re-enact KRS 311.377 was "AN ACT relating to the establishment of certificate of need, licensing and regulation of health facilities and health services." *Id.* However, the 1980 version of KRS 311.377 fared no better than its predecessor, in that the Court found that it violated section 51 of the Kentucky Constitution. The Court held that "[t]he problem is that the 1980 re-enact-

---

1. KRS 311.605(2) grants the power to agents of the Board of Medical Licensure to seize whatever records are necessary to enforce KRS 311.550—.620 (which are the provisions governing the practice of medicine in the Commonwealth). KRS 311.605(2) provides that "[s]uch inspection or seizure of peer review records shall not affect the confidential nature of those records as pro-

vided in KRS 311.377, and the board shall maintain such peer review records so as to protect *the confidentiality thereof.*" (emphasis added).

2. The act in question was entitled "AN ACT relating to health care malpractice insurance claims." 1976 Ky. Acts Ch. 304.

ment is a bill even more omnibus and even less related by title to a civil action asserting a malpractice claim than is the 1976 Bill." *Sweasy v. King's Daughters Memorial Hospital,* Ky., 771 S.W.2d 812, 815 (1989). The *Sweasy* court made clear that it was not ruling on whether KRS 311.377 applied to malpractice claims, but if it did apply to such actions, then KRS 311.377 was unconstitutional as enacted in 1980. *Id.*

In reaction to the *Sweasy* decision, the General Assembly re-enacted KRS 311.377 in 1990. *Id.* In reviewing the preamble of the legislation it is clear the General Assembly believed that *Sweasy* had rendered KRS 311.377 unconstitutional.

> WHEREAS, the protection afforded to peer review participants for review functions relating to acts occurring from July 15, 1980, has been eliminated by the Supreme Court's decision in *Sweasy v. King's Daughters Memorial Hosp.,* Ky., 771 S.W.2d 812 (1989), and the lack of such protection *inhibits open and candid peer review;* and
>
> WHEREAS, there is an urgent need to promote effective peer review for *the protection and welfare of the public;*

1990 Ky. Acts Chapter 271 (emphasis added). Since the *Sweasy* court conditioned rendering KRS 311.377 unconstitutional on its application to medical malpractice cases, the only reason the General Assembly needed to re-enact KRS 311.377 was if the General Assembly had desired the statute to apply to malpractice cases.

The majority suggests that the "General Assembly mistakenly interpreted *Sweasy* as holding that the statute was unconstitutional on its face." Slip op. at 468. I cannot agree with this interpretation of the General Assembly's actions. This Court stated in *Sweasy* that it was only rendering KRS 311.377 unconstitutional if it applied to medical malpractice actions. The General Assembly's 1990 re-enactment of KRS 311.377 stated that since this Court's decision in *Sweasy* had struck KRS 311.377 as enacted in 1980, it was necessary to re-enact KRS 311.377. I

cannot read this course of events in any other way than to find that the General Assembly intended for KRS 311.377 to apply in medical malpractice actions.[3] When a court interprets a statute such as KRS 311.377 in one fashion, it is well within the province of the legislature to overturn the finding of the court by directing that the statute be interpreted in another fashion. That is precisely what has occurred in the instant case. In *Sweasy* we overruled KRS 311.377 as it applied to medical malpractice actions, and in 1990, the legislature re-enacted KRS 311.377 to encompass such actions. The majority's actions, in ignoring the clear action of the General Assembly in legislatively overruling the decision in *Sweasy,* seriously damages the credibility of this Court.

With all respect to my colleagues, I believe that they continue to compound the erroneous decisions of this Court with regard to KRS 311.377. Since the statute's, this Court has sought to avoid the clear mandate of KRS 311.377 to make confidential peer review material in "all civil actions." In the past, this Court employed section 51 of the Kentucky Constitution to strike down the privilege. However, when the law was enacted in 1990, the General Assembly limited the contents of the bill to this topic alone and in doing so avoided the possibility of any section 51 challenges. Since the majority cannot employ to section 51, it has chosen to limit the effect of the privilege so as to render it irrelevant.

Although I believe that the preceding discussion of *Sweasy* and the 1990 re-enactment of KRS 311.377 resolves the issue of the intent of the legislature, there are several other cases in which this Court was called upon to grapple with peer review and privilege issues. In *Appalachian Regional Health Care v. Johnson,* Ky., 862 S.W.2d 868 (1993), the issue was before this Court on an appeal of a denial of a petition for a writ of prohibition by the Kentucky Court of Appeals. The hospital sought to prohibit discovery of peer review materials in a medical malpractice case. This Court held that a

---

**3.** Although I say that the General Assembly intended the protection of KRS 311.377(2) to apply to medical malpractice actions, it would be more

accurate to say that the intent was for KRS 311.377(2) to keep peer review records confidential "in all civil actions."

writ of prohibition was not the correct remedy because there was no showing of irreparable harm due to the discovery of documents relating to peer review and there was no showing that the remedy of appeal was inadequate. *Id.* at 870–71. In discussing the goal of KRS 311.377, this Court noted that the statute was enacted to protect the reviewers, not the reviewed. *Id.* at 870. However, since the case was never addressed on the merits, it is strictly obiter dictum and as such is without precedential value.

In the case of *Adventist Health Systems/Sunbelt Health Care Corp. v. Trude,* Ky., 880 S.W.2d 539 (1994), a doctor sought to rescind his resignation and be reinstated as a member of a hospital's medical staff. The doctor attempted to acquire peer review records and the defendant-hospital asserted KRS 311.377(2) as a defense for failing to produce the records. This Court held that KRS 311.377(2) covered any civil action and thus the records were privileged. *Id.* at 542.

The latest case in this line is *Leanhart v. Humana, Inc.,* Ky., 933 S.W.2d 820 (1996). In *Leanhart,* a plaintiff in a medical malpractice case sought to discover peer review materials held by the hospital in order to demonstrate that the hospital had been negligent in its recruiting of the defendant-doctor, in granting him staff privileges, and in permitting him to retain these staff privileges. *Id.* at 820. However, during the course of the oral argument of the case before this Court, it was established that the documents sought were not within the protection of KRS 311.377 because they were not peer review materials. They were simply other hospital documents such as "administrative records, including complaints by patients and members of the nursing staff." *Id.* Since the documents were not "internal Peer Review Committee records generated by that committee's investigation" of the defendant-doctor, they were not peer review materials within the meaning of KRS 311.377(2). The relevance of *Leanhart* is that the coverage of KRS 311.377(2) is to be narrowly construed to only apply to those records which are generated by the peer review entity. The vast majority of records which a peer review committee holds will be discoverable since they are not the result of the decision-making process, but rather, records created for other purposes and used in making the decision.

"It is neither the wisdom nor the expediency of this legislation that concerns the court, for that is a matter for the legislative branch of our government. The sole duty herein is scrutiny of the act in the light of the constitution." *Commonwealth, Revenue Cabinet v. Smith,* Ky., 875 S.W.2d 873, 875 *cert. denied sub nom Yeoman v. Kentucky,* 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994). The duty of the General Assembly is to determine the public policy of the Commonwealth and to enact legislation in conformity therewith. *Commonwealth. v. Wilkinson,* Ky., 828 S.W.2d 610, 614 (1992). It is the duty of this Court to interpret the legislation in light of the principles of statutory interpretation in accord with public policy as expressed by the General Assembly. Whether KRS 311.377(2) is "fair" or "reasonable" is a matter for the citizens of the Commonwealth to determine through their elected representatives. We are not a super-legislature and should not act as such.

### III. SCOPE OF PRIVILEGE CREATED BY KRS 311.377(2).

The majority has held that the privilege created in KRS 311.377(2) is limited to suits against peer review entities and has no application to medical malpractice suits. This statement exposes the flawed logic with which the majority reached its decision. The language in the statute is unambiguous. It simply states that peer review materials shall not be admissible in "any civil action." The majority seems to think that this is the same as the statement "in any civil action against a peer review entity." I cannot agree.

KRS 311.377(1) creates a qualified privilege for the acts of all persons while involved in the peer review process. KRS 311.377(2) makes all records in the peer review process confidential. The majority believes that this confidentiality only extends to suits against the peer reviewers brought by a party aggrieved with the peer review process itself. Since peer reviewers already possess a qualified privilege against lawsuits, the majority

today holds that the purpose of KRS 311.377(2) is to make peer review records confidential in those lawsuits which allege that the peer reviewers acted in bad faith. Accordingly, under the majority interpretation, peer review records are only protected when the peer review process itself is alleged to have been undertaken in bad faith. This result certainly defies common sense in that if a party is claiming that the peer reviewers acted in bad faith, isn't this the one circumstance under which peer review records would be highly probative? In fact, the peer review records would be the only documentary evidence of the peer reviewers' bad faith. I believe that the majority's strained logic is incorrect.

The majority believes that because subsection 1 is limited to persons who apply for or receive staff privileges, the confidentiality requirements of subsection 2 only apply in cases involving this same class of persons. The only analysis offered to support this reading is that "it is reasonable to conclude that the General Assembly intended that the subject matter of Subsection 2 should be no broader in scope than the subject of Subsection 1." Op. at 469. Exactly *why* it is reasonable to make this conclusion is noticeably absent from the majority opinion. There is no reason to think that the General Assembly did not intend the literal meaning of the words of the statute.

By reading KRS 311.377, I reach the conclusion that subsection 1 provides a qualified privilege to the peer reviewers and subsection 2 makes the peer review records confidential "in all civil actions." Under my reading, both sections of the law operate in a coherent and logical fashion. Under the majority reading, the only purpose of subsection 2 is to make the peer review records unavailable in the one proceeding in which they would be most relevant.

I believe that the majority's opinion is also undercut by certain language within statute itself. The last sentence of subsection 2 states that "[t]his subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation ." This is an unusual qualifier to place upon a privilege which is limited to those who sought or received staff privileges as described by subsection 1. Under what circumstances would a physician be involved in a proceeding that was "governed exclusively by federal law or federal regulation" against a peer review committee? The answer is there are extremely few such proceedings. The only conclusion which I can draw from this sentence is that the General Assembly envisioned other types of actions than the one asserted by the majority and sought to avoid any federal pre-emption problems by the inclusion of this sentence.

I find support for my view within the enactment of the statute as well. The statement of intent by the General Assembly makes clear that this law was passed to protect the public and to encourage open and candid peer review. Certainly an element of protecting the integrity of the peer review process is the qualified immunity which subsection 1 grants to those involved in the peer review process. As the language of the General Assembly clearly states, KRS 311.377 is designed to protect "open and candid peer review." As any person who has ever been called upon to make a candid evaluation is aware, the degree of candor increases exponentially when anonymity is assured. Certainly protection from lawsuits is necessary to encourage the peer review process. However, no less necessary is the ability to speak in a forthright fashion about one's colleagues in a manner that might not be entirely favorable. It is precisely this speech which subsection 2 is designed to protect. Dangers come in forms besides lawsuits. Subsection 2 assures peer reviewers that their comments will be kept confidential within the committee making the relevant determination.

The majority suggests that to provide an absolute privilege with respect to peer review documents would be unreasonable. Accordingly, the majority is permitted to modify the language of the law to the extent needed to make it reasonable. This is not the correct standard. This Court has "a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Reda Pump Co., A Division of TRW, Inc. v. Finck,*

Ky., 713 S.W.2d 818, 820 (1986) *rev'd on other grounds Caterpillar, Inc. v. Brock*, Ky., 915 S.W.2d 751 (1996), *citing Dept. of Revenue v. Greyhound Corp.*, Ky., 321 S.W.2d 60, 61 (1959). I am not necessarily in disagreement with the majority's contention that KRS 311.377(2) creates an unreasonable protection for peer reviewers. However, the case law is clear that a law must be more than unreasonable before we may intervene and strike it. A law must be "absurd or wholly unreasonable." *Id.*

By accepting the majority's new-found and expansive interpretation of this doctrine, a virtual Pandora's box has been opened. Under this new test asserted by the majority, any law which is merely unreasonable in its perceived result can be stricken. By fashioning this review standard, the Court arrogates the power to wander through duly enacted legislation and strike that which leads "to an unreasonable result." Op. at 470. To strike offensive legislation, this Court would only need to postulate a given set of facts under which the result obtained could be unreasonable. The majority states that an absolute privilege is unreasonable under the newly formulated test and as such must be modified to a "reasonable" result. What the majority fails to discuss is what makes the privilege unreasonable. The majority asserts that since the medical practitioners were not the intended beneficiaries of KRS 311.377, any benefit to them is unreasonable. Accordingly, under the majority perspective, a statute which benefits any party who is not the intended beneficiary is unreasonable and must be read to remove the benefit from that party. Whether the collateral effect of legislation benefits anyone other than the intended beneficiary is irrelevant. In this case the intended beneficiary is the peer review process. If as a result of protecting the peer review process, the collateral effect is that plaintiffs in medical malpractice actions are denied access to the proceedings and findings of a peer review committee, that is simply a legislative decision which we are bound to

honor even if the result is not one with which we agree.

Whether, as the majority asserts, KRS 311.377 "tilts the legal playing field against" those who would seek to discover peer review records is of no moment in discerning the meaning of this law. Op. at 470. Whether KRS 311.377 creates an unbalanced playing field is inappropriate for this Court to consider in construing a statute.[4] Rather, it is an appropriate issue for interested parties to argue before a legislative body. Perhaps the legislature sought to tilt the playing field against one side over the other. That would seem to me to be a political question that this Court should defer to the legislature. Yet, the majority apparently feels compelled to ignore the legislative intent expressed in the preamble to the enactment of this law and to replace it with the majority's own idea of that which is correct.

> As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used.

*Beckham v. Board of Educ.*, Ky., 873 S.W.2d 575, 577 (1994), *citing Gateway Construction Co. v. Wallbaum*, Ky., 356 S.W.2d 247 (1962). While this body is charged with acting as a check on the two other co-equal branches of the government of the Commonwealth, we must not overstep our constitutional duties by replacing the General Assembly's judgment with our own. I would resolve the problem the majority opinion creates by giving the language of the statute its natural and normal meaning. The General Assembly wrote the words, "in any civil action," and that is the meaning which I would give to the law. I fear that in this matter, we have been substituting our judgment for that of the legislature for far too long.

### CONCLUSION

In conclusion, I would hold that subsection 2 of KRS 311.377 makes all peer review

---

4. Such an expression of concern is more appropriately channeled into a discussion of whether KRS 311.377 qualifies as special legislation in violation of section 59 of the Kentucky Constitu-

tion. However, as that issue is not presently before the Court, it would be imprudent to engage in any further discussion at this time.

materials confidential "in all civil actions." I believe that this is the intent of the General Assembly and it has been repeatedly thwarted by this Court. Accordingly, I respectfully dissent.

Special Justice LARRY NOE joins in this dissenting opinion.